**LOTUS DEVELOPMENT CORPORATION, Plaintiff, Appellee,**

v.

**BORLAND INTERNATIONAL, INC., Defendant, Appellant,**

**LOTUS DEVELOPMENT CORPORATION, Plaintiff, Appellee,**

v.

**BORLAND INTERNATIONAL, INC., Defendant, Appellant.**

**Nos. 97–1399, 97–1857.**

United States Court of Appeals, First Circuit.

Heard Jan. 9, 1998.

Decided May 15, 1998.

Gary L. Reback, with whom Michael Barclay, Colleen Bal, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, Peter E. Gelhaar, Katherine L. Parks, Donnelly, Conroy & Gelhaar, LLP, Boston, MA, Steven Brower, and Ginsburg, Stephan, Oringher & Richman, Costa Mesa, CA, were on brief, for appellant.

Henry B. Gutman with whom Simpson Thacher & Bartlett, Kerry L. Konrad, and Lori E. Lesser, New York City, were on brief, for appellee.

Before STAHL, Circuit Judge, CAMPBELL, Senior Circuit Judge, and LYNCH, Circuit Judge.

STAHL, Circuit Judge.

Defendant-appellant Borland International, Inc. ("Borland") appeals from the district court's order denying its motion for attorney's fees and costs incurred during extend-

ed litigation concerning its alleged infringement of plaintiff-appellee Lotus Development Corporation's ("Lotus") copyright in a computer program, Lotus 1–2–3. Borland, the prevailing party in this copyright infringement action, now claims that the district court abused its discretion in declining to award fees. We affirm.

## I.

### Background

Lotus 1–2–3 is a spreadsheet computer program that enables users to perform various functions and calculations. In 1987, Borland released spreadsheet programs Quattro and Quattro Pro, which competed with Lotus 1–2–3 and contained virtually identical copies of the 1–2–3 menu command hierarchy. The inclusion of this so-called "menu tree" from Lotus 1–2–3 prompted the instant litigation in 1990, the substance of which is set forth in our prior opinion. *See Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 810–811 (1st Cir.1995). Here we recite only the facts pertinent to the present appeal.

The hard-fought litigation below resulted in four separate district court opinions (Keeton, U.S.D.J.), culminating in the district court's conclusion that the 1–2–3 menu tree contained copyrightable expression and that Borland had thus infringed Lotus's copyrights in Lotus 1–2–3.[1] On March 9, 1995, we reversed, holding as a matter of first impression that the 1–2–3 menu command hierarchy was an uncopyrightable "method of operation" under 17 U.S.C. § 102(b). *See* 49 F.3d at 813–18. Subsequently, the Supreme Court granted Lotus's petition for certiorari but deadlocked on the merits, resulting in an affirmance by an equally divided Court. *See* 516 U.S. 233, 116 S.Ct. 804, 133 L.Ed.2d 610 (1996).

After the Supreme Court proceedings, Borland filed a motion for attorney's fees and "full costs" as the prevailing party pursuant to 17 U.S.C. § 505. Borland claimed that, as a result of Lotus's suit, it had incurred over $11 million in attorney's fees, $7.5 million in expert fees, and $1.6 million in other costs. It sought reimbursement for all of these expenses. Following oral argument, the district court (Woodlock, U.S.D.J.) denied Borland's motion.[2] As we explicate below, the district court reasoned, in essence, that Lotus and Borland had litigated a novel and unsettled question of copyright law in order to protect their own economic interests, and thus under *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994)(interpreting 17 U.S.C. § 505), an award of fees was not warranted. Borland now appeals this ruling.

## II.

### Discussion

Pursuant to 17 U.S.C. § 505, the district "court in its discretion may allow the recovery of full costs by or against any party.... The court may also award a reasonable attorney's fee to the prevailing party as part of the costs." We will disturb a ruling under section 505 only if the record persuades us that the trial court "indulged a serious lapse in judgment." *Texaco P.R., Inc. v. Department of Consumer Affairs*, 60 F.3d 867, 875 (1st Cir.1995).

In *Fogerty*, the Supreme Court rejected the "dual standard" for the award of fees, then in effect in many circuits, which allowed prevailing plaintiffs to recover attorney's fees almost automatically under section 505, but which required prevailing defendants to demonstrate that the plaintiff's claims were frivolous or brought in bad faith. *See* 510 U.S. at 534, 114 S.Ct. at 1033. Finding no basis for the disparate treatment of plaintiffs and defendants in the text of section 505, the *Fogerty* Court held that district courts should ex-

---

**1.** *See Lotus Dev. Corp. v. Borland Int'l, Inc.*, 788 F.Supp. 78 (D.Mass.1992) ("*Borland I*"); *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 799 F.Supp. 203 (D.Mass.1992) ("*Borland II*"); *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 831 F.Supp. 202 (D.Mass. 1993) ("*Borland III*"); *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 831 F.Supp. 223 (D.Mass.1993) ("*Borland IV*").

**2.** In May 1995, after the case was remanded to Judge Keeton, Borland filed a motion for the reassignment of this action under Local Rule 40.1(i) of the District of Massachusetts. The motion was granted and, after various recusals and other procedural events that are not relevant to our discussion, the motion for attorney's fees was assigned to Judge Woodlock.

ercise their equitable discretion to award fees in an even-handed manner, and with the goal of vindicating the overriding purpose of the Copyright Act: to encourage the production of original literary, artistic, and musical expression for the public good. *See id.* at 524, 534, 114 S.Ct. at 1028, 1033. Rather than formulate a specific standard for district courts to apply, the Court identified a list of nonexclusive factors that district courts *may* consider, such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in some cases to advance considerations of compensation and deterrence." *Id.* at 534 n. 19, 114 S.Ct. at 1033 n. 19 (citing *Lieb v. Topstone Indus., Inc.* 788 F.2d 151, 156 (3d Cir.1986)). Notably, the *Fogerty* Court eschewed arguments that courts should employ the so-called "British rule," which mandates the award of attorney's fees to prevailing parties. *See id.* at 534, 114 S.Ct. at 1033.

In denying Borland's fee application, the district court reasoned, in part, as follows:

*Fogerty* opened the possibility of the shifting of attorney's fees, but it did not embrace a regime of the automatic award of attorney's fees. Rather it recognized that there is to be undertaken an exercise of equitable discretion for which there is no precise formula.

. . . . .

What we dealt with here is a case dealing with what I call the open-textured dimensions of the copyright law in which the interstices were quite broad and in which judges attempted to knit a fabric that maintained the integrity of copyright law itself.... [T]here was merit on both sides, and [the court of appeals was] dealing with an area that was ... moving copyright law into a relatively uncharted area that would benefit from further directions from Congress and in which both parties had an important economic interest.

I find that the claims made by Lotus were meritorious. I also find that this is a

case in which the various judges ... had different views....

. . . . .

And so, while I find that this was not frivolous, [and that] the claims were objectively reasonable ... that we deal with a quite unique set of circumstances as to which the larger directions of *Fogerty* are not to make an award of attorney's fees....

The district court then considered whether an award was warranted in light of the other factors mentioned in *Fogerty*: motivation, compensation, and deterrence. Finding that these factors did not militate in favor of an award, the court denied fees.

█ Borland mounts both legal and factual challenges to the district court's decision. We turn first to Borland's claims of legal error. Borland asserts that the court applied the *Fogerty* standard incorrectly because it placed two factors, the non-frivolous nature of the plaintiff's claims and their objective reasonableness, above all other considerations. Borland contends that when corporate giants litigate important copyright questions of first impression, the resulting lack of frivolousness and objective unreasonableness will invariably preclude a prevailing defendant from obtaining attorney's fees. This reasoning, Borland concludes, is no different from the "dual standard" rejected in *Fogerty*, and thus, under *Fogerty* and *Edwards v. Red Farm Studio Co.*, 109 F.3d 80 (1st Cir.1997), the district court's analysis is legally erroneous.

Although we agree with Borland that defendants are no longer required as a matter of law to demonstrate culpable behavior on the plaintiff's part, *see Fantasy v. Fogerty*, 94 F.3d 553, 558 (9th Cir.1996), we disagree with Borland's characterization of the district court's reasoning. Had the district court taken such a hard line, Borland would have a strong argument. In *Edwards*, we reversed the denial of attorney's fees to a prevailing defendant because the district court had required a showing of bad faith or frivolousness. *See* 109 F.3d at 82. The district court here, however, committed no such error. Rather, it is evident that the court recognized that under *Fogerty* a showing of culpa-

bility is not a prerequisite for awarding fees: after concluding that Lotus's claims were neither frivolous nor objectively unreasonable, the court went on to consider the remaining *Lieb* factors. The district court merely reasoned, in part, that when a plaintiff prosecutes an action in good faith, in an unsettled area of law, and with a reasonable likelihood of success, against a party with similar financial resources, the prevailing party's case for attorney's fees is weaker, whether it be a plaintiff or a defendant. This view has a long history in copyright law, *see, e.g., McCulloch v. Albert E. Price, Inc.,* 823 F.2d 316, 322 (9th Cir.1987); *Official Aviation Guide Co. v. American Aviation Assocs.,* 162 F.2d 541, 542 (7th Cir.1947), and in no way conflicts with *Fogerty*'s command to treat prevailing plaintiffs and defendants even-handedly. As a result, we see no basis for concluding that the district court applied an incorrect legal standard.

■ Borland next contends that the district court committed legal error by relying on the Supreme Court's affirmance by an equally divided court to buttress its conclusion that Borland narrowly prevailed on the merits. Borland argues that the inference made by the court, that four Justices of the Supreme Court were ready to reverse our opinion on the merits, is legally incorrect because there is no way to ascertain the position of the Justices on the merits of the litigation.

The relevance of this objection to our present analysis is not obvious to us. At points, the court did refer to the split on the Supreme Court as some evidence that Lotus's claims had merit and thus were objectively reasonable. To the extent that Borland challenges this finding, its challenge is unpersuasive. The fact remains that Lotus filed this action only after prevailing on a virtually identical claim that was never appealed against a different software company. *See Lotus Dev. Corp. v. Paperback Software Int'l,* 740 F.Supp. 37 (D.Mass.1990) (Keeton, U.S.D.J.). Although we ultimately held to the contrary, we cannot say that Lotus's initial decision to rely on *Paperback* was

objectively unreasonable. Regardless of the meaning of the Supreme Court's narrow affirmance, the district court's conclusion that Lotus's chief claim was objectively reasonable is certainly a permissible one.

■ Borland also contends that the district court's application of the various *Lieb* factors was clearly erroneous. *See Lieb,* 788 F.2d at 156. The court found that neither party had an improper motivation in litigating the case, reasoning that both parties had important economic interests in the litigation and that there were "no clear signs for judicial determination." The court also held that the need to advance considerations of compensation and deterrence did not militate in favor of a fee award. The court found no "oppression by one party over the other in the ability to use their financial wherewithal to affect the litigation" and concluded that when "the parties are litigating a matter of some importance to the copyright laws, there is no need for deterrence."

Borland now contends that the district court erred by ignoring Lotus's alleged anticompetitive purposes in bringing the litigation, relying impermissibly on Borland's refusal to settle the case, and discounting the importance of encouraging copyright defendants to assert meritorious defenses. Borland notes that it advanced the interests of copyright law by litigating this case all the way through the Supreme Court against an unusually wealthy plaintiff. It also contends that the "vindication" of its own copyright in Quattro Pro increased the availability of copyrighted works. Borland concludes that "if ever there were a situation where the assertion of meritorious defenses should be encouraged, it is a case involving issues of first impression."

None of these contentions provides a basis for overriding the denial of fees and costs. Both sides proffered evidence on the issue of whether Lotus had intended to use this litigation to bankrupt Borland and thus maintain its dominant position in the spreadsheet market.[3] We cannot say, on the record be-

---

**3.** Borland points to articles in the financial press that reported that Lotus intended to use this

litigation to perform a "cashectomy" on Borland and described how Lotus benefitted from the

fore us, that the presence of an impermissible motive on Lotus's part is so clear that a contrary conclusion could not reasonably be reached. After all, copyright law often delineates the boundaries of economic competition. *See, e.g., Feist Publications, Inc. v. Rural Tel. Service,* 499 U.S. 340, 349, 111 S.Ct. 1282, 1289–90, 113 L.Ed.2d 358 (1991) (holding that the plaintiff's telephone directory lacked originality and thus copyright law did not bar defendant from copying the information to create a competing product). Arguably, there is nothing inherently improper about bringing a claim that is well-founded in law and fact against one's competitors, even when legal action, if successful, will inflict severe economic consequences upon them.

■ As for the district court's consideration of the parties' settlement negotiations, the court did note in its discussion of the motivation factor that "more careful evaluators of the expense of litigation might have chosen not to spend" the money to litigate the case. This statement does give us some concern. Copyright defendants with strong legal or factual defenses should not be deterred from litigation by the possibility that their refusal to settle an invalid claim will be held against them after they prevail. Such reasoning would conflict with *Fogerty*'s direction that the award of fees should encourage copyright defendants to assert meritorious defenses. *See* 510 U.S. at 527, 114 S.Ct. at 1029–30. We are confident, however, that the court's casual observation regarding the costs of litigation was not material to its ultimate determination. Rather, the court relied squarely on the parties' clear economic interests in pursuing the litigation, about which there is little to dispute.

■ Turning to the need to encourage meritorious defenses, a copyright defendant's success on the merits in a case of first impression may militate in favor of a fee award, but we are unwilling to hold that a successful defense in an important case necessarily mandates an award of attorney's fees. When close infringement cases are litigated, copyright law benefits from the resulting clarifi-

cation of the doctrine's boundaries. But because novel cases require a plaintiff to sue in the first place, the need to encourage meritorious defenses is a factor that a district court may balance against the potentially chilling effect of imposing a large fee award on a plaintiff, who, in a particular case, may have advanced a reasonable, albeit unsuccessful, claim. *Fogerty* made clear that courts are to evaluate cases on an individualized basis, with the primary responsibility resting on the shoulders of the district judge. Regardless of whether we would have approached the matter similarly, we are unable to say that the district court's analysis strikes us as an abuse of that discretion.

■ Borland's final contentions—that the district court erred by ignoring Borland's "vindication" of its own copyrighted computer program and Lotus's unusual wealth—are unpersuasive. As a basis for awarding fees, we see no meaningful distinction between Borland's vindication of its own copyrighted work and its assertion of a meritorious defense. The latter necessarily implies the former. In addition, the district court supportably found that both parties were financially able to litigate this important case. Lotus's unusual wealth in no way alters this conclusion.

■ As an alternative to its argument for all its fees and costs, Borland claims that the district court erred by not awarding Borland fees and costs attributable to those portions of the case in which Lotus's conduct was objectively unreasonable. Specifically, Borland claims it was objectively unreasonable for Lotus (1) to litigate the "functional constraints" issue, *see Borland II,* 799 F.Supp. at 221; *Borland III,* 831 F.Supp. at 207; (2) to add the "Key Reader" claim in the midst of the case, *see Borland IV,* 831 F.Supp. at 230–31; and (3) to prosecute a trial on damages during the pendency of Borland's successful appeal.

The district court denied Borland's motion for "full costs" covering the entire litigation, but did not explicitly rule on Borland's alter-

litigation by keeping other software-makers from copying its product. Borland claims that Lotus was thus able to maintain a seventy percent market share for spreadsheet programs throughout the pendency of this litigation.

native request for "partial" fees and costs. The issue of awarding partial fees was, however, argued at some length during the hearing on Borland's motion, which indicates that the district court considered Borland's arguments.[4] Although the district court's silence is troubling, we think it implicit that his decision that no fees are warranted for the entirety of the case necessarily encompasses Borland's request for fees resulting from individual parts of the litigation. In addition, there is no suggestion in the district court's opinion that it was under the legally erroneous impression that an award of partial fees was not allowable under section 505.[5]

This case is close, particularly in the lack of analysis on Borland's partial fee request.[6] If the district court had decided to award at least some fees, it is difficult to see how that decision would have been an abuse of discretion either. But the decision to award fees is not a decision committed to the appellate court in the first instance. We are thus limited to saying only that the district court did not abuse its discretion in its decision.

*Affirmed. No costs to either party.*

---

4. Borland argued at the hearing on its motion that adding the Key Reader claim late in the proceedings before Judge Keeton was objectively unreasonable. The following colloquy took place at the end of Borland's argument.

> THE COURT: I understand the argument that some portion of the claims that [Lotus was] making were less persuasive than others. But that really expresses itself, doesn't it, in parsing through some portion of the attorney's fees that would be more likely to be awarded.
> BORLAND: ... Now, I am not going to suggest that we get a total parsing of all the issues.... I would hope that we wouldn't have to get into a detailed discussion of the damage phase. We could set a conference in 30 days, 45 days, whatever Your Honor felt....
> THE COURT: Well, I have a motion I have to act on. So, Mr. Gutman?

During Lotus's argument, the Court raised the issue of the Key Reader Claim with Lotus's counsel.

> THE COURT: What about the Key Reader aspect of this?
> LOTUS: We have never withdrawn that claim. We have never apologized for that claim. We believe that Judge Keeton's opinion was cor-

rect on the law at the time it was given based on the facts of this particular case.... I would not concede that it is either a frivolous or objectively unreasonable claim.

5. We note that courts have exercised their discretion to tailor fee awards in light of the behavior of the parties during litigation. *See Davis v. E.I. DuPont de Nemours & Co.*, 257 F.Supp. 729, 732 (S.D.N.Y.1966) (awarding fees for the infringement trial but denying fees for the damages trial due to the unusual complexity of the issues involved in the latter); *cf. International Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 384 (7th Cir. 1988) (noting that a fee award was appropriate because the defendant's handling of the summary judgment proceedings had unnecessarily required trial).

6. Borland argues that 17 U.S.C. § 505 allows the recovery of costs in excess of the statutory costs allowed by 28 U.S.C. § 1920 and that Judge Woodlock cannot return this case to Judge Keeton on remand because the case was reassigned via Local Rule 40.1(i). As we affirm the district court's decision to deny fees and costs, we need not reach these issues.