RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0233P (6th Cir.)
File Name: 04a0233p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————

BRIDGEPORT MUSIC, INC.,
*Plaintiff-Appellant,*

SOUTHFIELD MUSIC, INC.;
WESTBOUND RECORDS, INC.;
NINE RECORDS, INC.,
*Plaintiffs,*

v.

RHYME SYNDICATE MUSIC;
UNIVERSAL-POLYGRAM
INTERNATIONAL PUBLISHING,
INC., individually and as
successor to Polygram
International Publishing, Inc.;
CARRUMBA MUSIC; AMMO
DUMP MUSIC,
*Defendants-Appellees,*

WB MUSIC CORP.; WARNER-
CHAPPELL MUSIC, INC.;
RHYME SYNDICATE RECORDS,
*Defendants.*

Nos. 03-5005/5744

---

2  *Bridgeport Music, et al. v. Rhyme*  Nos. 03-5005/5744
*Syndicate Music, et al.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 01-00706—Thomas A. Higgins, District Judge.

Argued: April 28, 2004

Decided and Filed: July 22, 2004

Before: GUY and GILMAN, Circuit Judges;
BARZILAY, Judge.*

———————

## COUNSEL

**ARGUED:** Richard S. Busch, KING & BALLOW,
Nashville, Tennessee, for Appellant. Russell J. Frackman,
MITCHELL, SILBERBERG & KNUPP, Los Angeles,
California, for Appellees. **ON BRIEF:** Richard S. Busch,
D'Lesli M. Davis, KING & BALLOW, Nashville, Tennessee,
for Appellant. Russell J. Frackman, Jeffrey D. Goldman,
Marc E. Mayer, MITCHELL, SILBERBERG & KNUPP, Los
Angeles, California, Philip M. Kirkpatrick, STEWART,
ESTES & DONNELL, Nashville, Tennessee, for Appellees.

GUY, J., delivered the opinion of the court, in which
BARZILAY, J., joined. GILMAN, J. (pp. 23-24), delivered
a separate opinion concurring in part and dissenting in part.

---

*The Honorable Judith M. Barzilay, Judge for the United States Court
of International Trade, sitting by designation.

_____

**OPINION**

_____

RALPH B. GUY, JR., Circuit Judge.  Plaintiff, Bridgeport Music, Inc., appeals from the district court's orders (1) granting summary judgment to defendant Universal-PolyGram International Publishing, Inc. (UPIP), on Bridgeport's copyright infringement claims; (2) dismissing defendants Carrumba Music and Ammo Dump Music without prejudice for lack of proper service of process; and (3) awarding attorney fees and costs to UPIP as a prevailing defendant under 17 U.S.C. § 505.  No other claims or parties are before us.[1]  After review of the record and the arguments presented on appeal, we affirm both the entry of summary judgment and the dismissals for lack of service.  With respect to Bridgeport's separate appeal from the award of attorney fees and costs to UPIP, however, we vacate the award and remand for further consideration consistent with this opinion.

**I.**

The claims at issue in this appeal were first asserted on May 4, 2001.  In that original complaint, Bridgeport and three sister companies alleged nearly 500 counts against approximately 800 defendants for copyright infringement and other state law claims arising from music sampling.  The amended complaint, filed after the district court severed the initial pleading into 476 separate actions, was based on the claim that the rap song "99 Problems" sampled the opening three-note chord from the musical composition "Get Off Your

_____

[1] Bridgeport appealed from the entry of summary judgment in favor of defendants WB Music and Warner/Chappell Music, but voluntarily dismissed the appeal against them as a result of a settlement.  Also, no distinct claims of error have been argued with respect to Rhyme Syndicate Music.

Ass and Jam" ("Get Off").[2]  Bridgeport Music is in the business of owning and exploiting copyrights in musical compositions.  We assume for purposes of this appeal that Bridgeport would be able to establish that it owns the composition "Get Off," which was written and recorded by George Clinton, Jr., and the Funkadelics in the mid-1970s.

**A.  Background Facts**

The song "99 Problems" was co-written and performed by Tracy Marrow, p/k/a Ice-T, for release on the album "Home Invasion."  At that time, Marrow, d/b/a Rhyme Syndicate Music, owned 66.7% of the composition copyright in "99 Problems."  Alphonso Henderson, p/k/a DJ Aladdin, co-wrote "99 Problems."  The album was released by Priority Records on March 23, 1993.  While a mechanical license was probably granted for use of the composition "99 Problems," there was no evidence presented in that regard.

More than a year later, UPIP obtained an interest in the composition through its predecessor, PolyGram International Publishing, Inc., by assignment from Marrow, d/b/a Rhyme Syndicate Music.  Specifically, in November 1994, Marrow entered into several agreements with PolyGram, including an Exclusive Songwriter's Agreement and a Co-Publishing Agreement covering past and future works.  As part of these agreements, PolyGram acquired half of Marrow's interest in the composition "99 Problems" (or 33.34%), as well as the exclusive right to administer their combined interests and

_____

[2] The term "sampling" typically refers to the copying of a portion of a master sound recording and using it in the making of a new work.  *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 475 n.2 (6th Cir.), *cert. denied*, 124 S. Ct. 399 (2003).  Use of a sample from a master recording implicates two distinct copyrights:  one in the musical composition and one in the sound recording itself.  *Id*. at n.3.  When the sample is an interpolation, meaning the master sound recording is not used, only the composition copyrights are implicated.

collect and distribute royalties. The copyright registration reflecting this transfer listed the copyright claimants as PolyGram, Rhyme Syndicate Music, WB Music, Carrumba Music, and Ammo Dump Music. The record does not reflect when UPIP succeeded PolyGram.

On January 7, 1998, Bridgeport's administrator, Jane Peterer, notified UPIP and others of its sampling claim and demanded that Bridgeport be granted a 33.33% ownership interest in the musical composition "99 Problems." UPIP did not respond, but Warner/Chappell Music denied any samples were used on the "Home Invasion" album.

## B.   Procedural Facts

This action was commenced May 4, 2001, more than three years after Bridgeport had actual notice of the alleged infringement. Plaintiffs attempted to effect service of process on Carrumba Music and Ammo Dump Music through Warner/Chappell Music. Bridgeport also attempted to serve Carrumba Music at an address that was the office of Carrumba's accounting firm.

Carrumba Music moved to dismiss both for failure of service and for lack of personal jurisdiction, while Bridgeport filed a motion for default judgment against Ammo Dump Music. The district court granted Carrumba's motion, denied Bridgeport's motion for default judgment, and dismissed Carrumba Music and Ammo Dump Music without prejudice pursuant to Fed. R. Civ. P. 4(m). Bridgeport's subsequent motion for reconsideration was  denied.

Defendants Warner/Chappell Music and WB Music (Warner defendants) moved for summary judgment on several grounds. In August 2002, after considerable briefing and supplementation, the magistrate judge issued a report and recommendation in which he concluded that the infringement claims against the Warner defendants should be dismissed

because they were barred both by a release as part of a settlement of prior litigation and by the applicable three-year statute of limitations. As part of that decision, the magistrate judge indicated that although the Warner defendants had issued a license for the release of "99 Problems" in 1993, the only acts by the Warner defendants within the limitations period were the receipt of royalties on the sale of the album. Recognizing that there was no case law on the question, the magistrate judge concluded that the receipt of income from the sale of infringing products within the limitations period, by a party who does not manufacture, distribute, or sell the infringing product (but who did provide a license), would not constitute direct or contributory infringement.

The district court adopted the report and recommendation, over plaintiffs' objections, and granted summary judgment to the Warner defendants on September 16, 2002. Because Bridgeport has settled with the Warner defendants, that order is no longer before us on appeal. It remains pertinent, however, to the district court's decision to award UPIP attorney fees and costs incurred after September 16, 2002.

UPIP had also moved for summary judgment, arguing, *inter alia*, that Bridgeport's claims were barred, or alternatively, limited by the statute of limitations.[3] While the motion was pending, UPIP wrote to Bridgeport and proposed that they stipulate to judgment in favor of UPIP based on the magistrate judge's recommendation concerning the Warner defendants' motion for summary judgment. Bridgeport did not respond. Once the district court granted summary judgment to the Warner defendants, UPIP obtained leave to

---

[3]UPIP also argued that Bridgeport could not prevail on its infringement claims either because the sampled three-note chord was not entitled to copyright protection, or because the use of the sample from the composition was *de minimis*. We do not reach the questions of originality or *de minimis* use.

supplement its motion for summary judgment. Bridgeport responded in opposition on October 4, 2002. The district court granted summary judgment to UPIP on November 7, 2002, finding that Bridgeport failed to demonstrate direct, contributory, or vicarious infringement by UPIP within the limitations period. Judgment was entered accordingly, and Bridgeport appealed.

In a post-judgment motion, UPIP moved for an award of $297,292.60 in attorney fees and $16,119.22 in nontaxable costs as a prevailing party under 17 U.S.C. § 505. On May 6, 2003, the district court awarded UPIP $79,340.94 in attorney fees and $3,409.35 in costs, which represented the fees and costs incurred by UPIP after September 16, 2002. Bridgeport appealed.

## II.

In its first claim of error, Bridgeport argues that there was a question of fact whether UPIP committed acts within the limitations period for which it could be liable for copyright infringement. We review the district court's decision to grant summary judgment *de novo*. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). In deciding a motion for summary judgment, the court must view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on his pleadings, but must come forward with evidence from which a rational trier of fact could find in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### A.   Copyright Infringement

A civil action under the Copyright Act must be "commenced within three years after the claim accrued." 17 U.S.C. § 507(b). A cause of action accrues when a plaintiff knows of the infringement or is chargeable with such

knowledge. *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994). Because each act of infringement is a distinct harm, the statute of limitations bars infringement claims that accrued more than three years before suit was filed, but does not preclude infringement claims that accrued within the statutory period. *Id*.; *Stone v. Williams*, 970 F.2d 1043, 1049-50 (2d Cir. 1992); *Hoste v. Radio Corp. of Am.*, 654 F.2d 11, 11 (6th Cir. 1981) (per curiam); *Mount v. Book-of-the-Month Club, Inc.*, 555 F.2d 1108, 1110-11 (2d Cir. 1977).

It is undisputed that Bridgeport had actual knowledge of its infringement claims with respect to "99 Problems" more than three years before this action was filed and, therefore, claims arising prior to May 4, 1998, are barred by the statute of limitations. For this reason, our focus must be on whether Bridgeport established any acts within the period for which UPIP could be held liable as a direct infringer, a contributory infringer, or as one vicariously liable for the acts of another.

Liability for direct infringement arises from the violation of any one of the exclusive rights of a copyright owner. 17 U.S.C. § 501(a). The owner of copyright in a musical composition has the exclusive right to, and to authorize others to, reproduce, distribute, perform, display, and prepare derivative works from the copyrighted composition. 17 U.S.C. § 106. Liability for contributory infringement is based on the defendant's relationship to the direct infringement. *Ez-Tixz, Inc. v. Hit-Tix, Inc.*, 919 F. Supp. 728, 732-33 (S.D.N.Y. 1996). Contributory infringement occurs when one, "with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971). A defendant can be held vicariously liable if he enjoys a direct financial benefit from the infringing activity and "has the right and ability to supervise" the infringing activity. *Ellison*

*v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (internal quotation marks and citation omitted).

## B.  Analysis

The district court seems to have assumed that UPIP granted a mechanical license for use of the composition "99 Problems" on the "Home Invasion" album and received royalties from the sale of the album within the limitations period.  With that assumption, the district court then found that no direct infringement could be established because there was no evidence either that Bridgeport ever demanded that UPIP revoke its license because of the claimed infringement, or that UPIP had the right to revoke the license for this reason.  It also found, consistent with its earlier decision relating to the Warner defendants, that UPIP's passive receipt of income alone could not constitute contributory infringement. Finally, vicarious liability was rejected because there was no showing that UPIP had control over a direct infringer.

After close examination of the record, we find a complete absence of proof connecting UPIP either to the distribution and sale of the album or to the performance of the allegedly infringing work within the limitations period.  We affirm on this basis and do not reach the question of whether a publisher may be found liable for infringing sales occurring within the limitations period when its only actions were the granting of a license outside the period and the receipt of royalty payments under that license within the limitations period. Bridgeport has also failed to demonstrate a basis to find UPIP vicariously liable for the acts of a direct infringer.

### 1.  Mechanical License

Bridgeport repeatedly emphasizes that there was evidence that the "Home Invasion" album continued to

be sold and offered for sale after May 4, 1998.[4]  There is no claim, however, that UPIP was directly involved in the manufacture, distribution, or sale of the album.  Nor is there evidence from which a rational trier of fact could conclude that UPIP ever granted a mechanical license for use of the composition "99 Problems" on the "Home Invasion" album.  UPIP became a co-owner of the composition more than a year after the album's release and has flatly denied ever granting a license for the use of the composition.  Specifically, UPIP offered the affidavit of Edward Arrow, a vice-president of copyrights, attesting that there is no record that UPIP ever issued any mechanical, performance, synchronization, sheet/music or other licenses, or distributed or otherwise exploited sheet music for the musical composition "99 Problems."  Arrow also stated that UPIP never controlled the sale, distribution, or public performance of the "Home Invasion" album; the issuance of blanket performance licenses; or the apportionment of fees generated by such licenses.

In addition, UPIP's records showed that it did not receive any mechanical royalties for the sale of "99 Problems."  In fact, Anthony Sarageueta,  vice-president of royalties, testified that while UPIP would seem to have a right to mechanical royalties, he could not explain without conducting further research why UPIP had not received any such royalties.  The burden was on Bridgeport to follow up with further discovery in its attempt to connect UPIP to the distribution and sale of the album.  Neither UPIP's status as a co-owner of the composition, nor its contractual right to administer the composition and receive and distribute

---

[4]Specifically, there was evidence that over 300,000 copies of the "Home Invasion" album were sold since its release in 1993.  With respect to the relevant period, Bridgeport also indicates in a footnote that a late-discovered Chart History showed that 2,377 copies of "99 Problems" sold between May 4, 1998, and May 4, 2001.

royalties, is sufficient to create a genuine issue of fact whether UPIP received mechanical royalties.

Since Bridgeport failed to make a showing that UPIP granted a license, received any royalties from the sale of the album, or had any connection to the distribution and sale of the album within the limitations period, summary judgment was properly entered in favor of UPIP on the claims of direct and contributory infringement. Similarly, Bridgeport's claim of vicarious liability is based solely on the allegation that UPIP granted a mechanical license to the record label and had the right (through the contracts with Marrow) to administer the composition. The record fails to demonstrate UPIP's connection to, much less the ability to supervise or control, the infringing activity.

### 2. Performance Royalties

Bridgeport contends that the undisputed evidence in the record establishes that "99 Problems" was publicly performed after May 4, 1998, as a direct result of licenses granted by UPIP even if they were granted outside the limitations period. On the contrary, the only thing established by the evidence was that UPIP *received* $0.81 in performance royalties after May 4, 1998. Specifically, UPIP received a total of $14.91 in performance royalties related to the public performance of "99 Problems," of which only $0.81 was received after May 4, 1998.

A composition copyright owner has the exclusive right to perform, or authorize the performance of, a copyrighted composition. 17 U.S.C. § 106(4). A claim for infringement of this right requires proof that the composition was publicly performed without having obtained permission. *See Jobete Music Co. v. Johnson Communications, Inc.*, 285 F. Supp.2d 1077, 1082 (S.D. Ohio 2003). Because Bridgeport failed to show that any public performance occurred after May 4, 1998, there was no evidence of an infringing act within the

limitations period either by UPIP, or to which UPIP could be liable under theories of contributory infringement or vicarious liability.[5]

For the above reasons, we affirm the entry of summary judgment in favor of UPIP on Bridgeport's claims of copyright infringement.

### III.

Bridgeport alleged that Ammo Dump Music and Carrumba Music, the d/b/a of Jorge Hinojosa, are publishers with an interest in the composition "99 Problems." The district court dismissed the action against both Ammo Dump Music and Carrumba Music for lack of proper service of process. If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time. FED. R. CIV. P. 4(m). We exercise plenary review over legal issues involving the adequacy of service but review the relevant findings of fact for clear error. *LSJ Inv. Co. v. O.L.D., Inc.*, 167 F.3d 320, 322 (6th Cir. 1999). Actual knowledge of a lawsuit does not substitute for proper service under Fed. R. Civ. P. 4.

---

[5] Bridgeport also argues that even if UPIP did not actually license use of the composition, UPIP may be liable as a direct infringer for *offering* to license the work within the limitations period. None of the cases relied upon by Bridgeport involved the offering to license a work. *See Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 203 (4th Cir. 1997) (public library distributes infringing work when it adds the work to its collection, lists it in the catalog, and makes it available for borrowing by the public); *Repp v. Webber*, 914 F. Supp. 80, 84 (S.D.N.Y. 1996) (alleged infringer distributed the infringing work and granted licenses to third parties to reproduce the infringing work); *Johnson v. Radio City Prods., Inc.*, No. 97 CIV. 4099 (JSR), 1998 WL 171463 (S.D.N.Y. 1998) (question of fact whether there was a performance license and whether performances were authorized under the license).

## A.   Ammo Dump Music

Despite having been advised by Warner/Chappell that it was not authorized to accept service for Ammo Dump Music or Carrumba Music, Bridgeport attempted to serve the amended complaint on Ammo Dump Music through Warner/Chappell by mailing it to CT Corporation Systems, which is authorized to accept service on behalf of Warner/Chappell. Bridgeport contends that it properly served Ammo Dump Music by serving a "managing agent" as permitted by Fed. R. Civ. P. 4(h)(1).[6]

A managing agent is one authorized to transact all business of a particular kind at a particular place and must be vested with powers of discretion rather than being under direct superior control. *See Grammenos v. Lemos*, 457 F.2d 1067, 1073 (2d Cir. 1972). Another factor to consider is the exclusivity of the relationship between Warner/Chappell and

---

[6]Fed. R. Civ. P. 4(h) provides that:

**(h) Service Upon Corporations and Associations.** Unless otherwise provided by federal law, service upon a domestic or foreign corporation or upon a partnership or other unincorporated association that is subject to suit under a common name, and from which a waiver of service has not been obtained and filed, shall be effected:

(1) in a judicial district of the United States in the manner prescribed for individuals by subdivision (e)(1), or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant, or

(2) in a place not within any judicial district of the United States in any manner prescribed for individuals by subdivision (f) except personal delivery as provided in paragraph (2)(C)(i) thereof.

Ammo Dump Music. *See Dodco, Inc. v. Am. Bonding Co.*, 7 F.3d 1387, 1388-89 (8th Cir. 1993) (salesman did not exclusively represent the defendant). In support of its claim that Warner/Chappell is a managing agent for Ammo Dump Music, Bridgeport relies on the affidavit of Ed Pierson, an executive vice-president for Warner/Chappell, that was filed in opposition to Bridgeport's motion for entry of default judgment against Ammo Dump Music.

Pierson stated that Warner/Chappell works as a limited agent for thousands of writers and their publishing entities, but has never been authorized to accept service of process on behalf of a writer or publishing company. Generally, Warner/Chappell issues licenses to companies that want to use musical compositions in television, movies, video games, and the like. It collects the income generated from such licenses and distributes the royalty shares to the writers and/or their publishing entities. There was no evidence in the record concerning the amount of discretion Warner/Chappell can exercise with respect to the licensing of works owned by Ammo Dump Music. *See Jennings v. McCall Corp.*, 320 F.2d 64 (8th Cir. 1963) (salesman was not managing agent where he was hired to secure new accounts but did not have discretion to establish prices, terms, or conditions of contracts and whose orders were subject to company approval). Because Bridgeport failed to come forward with evidence supporting a finding that Warner/Chappell was a managing agent of Ammo Dump Music for purposes of Fed. R. Civ. P. 4(h)(1), the district court did not err by dismissing the action against Ammo Dump Music for lack of proper service of process.

## B.   Carrumba Music

Service on Carrumba Music, the d/b/a for Jorge Hinojosa, is governed by Fed. R. Civ. P. 4(e), the provision for service

of process on individuals.[7] Rule 4(e) permits service pursuant to the law of the state in which service is effected, which in this case is California because Hinojosa is a resident of California. *See LSJ Inv.*, 167 F.3d at 322-23. Under California law, service on an individual may be effected as follows:

If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served, as specified in Section 416.60, 416.70, 416.80, or 416.90, a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a

---

[7] Fed. R. Civ. P. 4(e) states:

**(e) Service Upon Individuals Within a Judicial District of the United States.** Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in any judicial district of the United States:

(1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State; or

(2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. Service of a summons in this manner is deemed complete on the 10th day after the mailing.

CAL. CIV. PROC. CODE § 415.20(b) (West 2004).

Bridgeport attempted to serve Carrumba Music by leaving the summons and amended complaint with a receptionist at the office of Provident Financial Management in Los Angeles, California. Provident is an accounting firm retained by Carrumba Music to perform routine bookkeeping and accounting functions limited to tasks such as paying bills, receiving and depositing checks, preparing taxes, and keeping Carrumba Music's books and records. Provident was not authorized to accept service of process on behalf of Carrumba Music.

Bridgeport failed to show compliance with California's rule for service of process on individuals because it offered no basis to conclude that the Los Angeles address for Provident was the usual place of business or usual mailing address of Carrumba Music. *See LSJ Inv. Co.*, 167 F.3d at 323 (office was location repeatedly given by defendant as the address for his business and himself). Accordingly, we find no error in the dismissal of Carrumba Music for lack of service of process.

## IV.

Turning next to Bridgeport's separate appeal, we review the district court's decision to award $79,340.94 in attorney fees

and $3,409.35 in nontaxable costs to UPIP for abuse of discretion. *Coles v. Wonder*, 283 F.3d 798, 804 (6th Cir. 2002); *Murray Hill Publ'ns, Inc. v. ABC Communications*, 264 F.3d 622, 639 (6th Cir. 2001). The Copyright Act provides that in civil suits the district court, in its discretion, may award costs, including reasonable attorney fees, to the prevailing party. 17 U.S.C. § 505.[8] This discretion must be exercised in an evenhanded manner with respect to prevailing plaintiffs and prevailing defendants, and in a manner consistent with the primary purposes of the Copyright Act. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).

While rejecting both a "dual standard" under which prevailing defendants are required to show frivolousness or bad faith and the "British Rule" of automatic recovery of attorney fees by the prevailing party, the Court in *Fogerty* explained that "'[t]here is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.'" *Id.* at 534 (citation omitted). Several nonexclusive factors were approved by the Court in *Fogerty* for consideration in making awards to prevailing parties, as long as the factors were "faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner." *Id.* at 534 n.19. Those factors include "'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* (quoting *Lieb v. Topstone Indus. Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)). As the district court observed, the factors need

---

[8]"In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.

not all weigh in favor of an award in order to grant fees to a prevailing party and other factors may be considered.

Separate summary judgment motions were filed by UPIP and the Warner defendants. After the magistrate judge issued his decision recommending that summary judgment be granted to the Warner defendants on August 5, 2002, UPIP wrote to Bridgeport and urged that Bridgeport stipulate to the entry of summary judgment in favor of UPIP. That letter, dated August 23, 2002, stated in part that:

> Despite lengthy, intrusive, and expensive discovery, you have not established and there is no evidence that any infringing **acts** by UPIP took place after May 4, 1998. This letter will further confirm that **none** of the very limited monies UPIP has received after May 4, 1998 attributable to the composition *99 Problems* are attributable to post-May 4, 1998 activities[.] UPIP has not granted any licenses for *99 Problems* after May 4, 1998. . . . Indeed, the total revenue received by UPIP for *99 Problems* since May 4, 1998 are **81 cents** – of which UPIP retained **40 cents**.

> Thus, in both Case Nos. 703 and 706, the Universal [d]efendants stand in the same shoes as the Warner defendants in Case No. 706. We can provide you with sworn declarations to this effect if you so desire (although, from the extensive discovery conducted and your failure to put forward any such evidence in opposition to our summary judgment motion, you are already aware of the complete absence of evidence of such activities during the statutory period).

> . . . .

We have reviewed your Rule 72 Objections to Judge Brown's R&R to Judge Higgins. Judge Brown's R&R was thoughtfully analyzed and well-reasoned, and we

fully anticipate that Judge Higgins will adopt it as the order of the Court. We understand you have also indicated you intend to appeal this issue to the Sixth Circuit. With that in mind, we propose and request that Bridgeport stipulate to judgment in favor of Universal Polygram International Publishing, Inc. ("UPIP") in Case 706 based upon Judge Brown's R&R. This would preserve the parties' and the Court's resources and avoid unnecessary expenditures of time, effort, and expense because the cases against both Warner-Chappell and UPIP would proceed simultaneously.

Bridgeport did not respond, and UPIP began preparing for the trial scheduled to commence on November 12, 2002.

Once the district court adopted the magistrate judge's report and recommendation with respect to the Warner defendants on September 16, 2002, UPIP obtained leave to supplement its pending motion for summary judgment. In the supplemental brief filed on September 27, 2002, UPIP argued that it "stood in the same shoes" as the Warner defendants. Bridgeport filed an opposing memorandum on October 7, 2002. The district court granted summary judgment to UPIP on November 7, 2002, and Bridgeport appealed. On December 9, 2002, UPIP filed its motion seeking $297,292.60 in attorney fees and $16,119.22 in nontaxable costs as a prevailing party.

In its order of May 6, 2003, the district court found UPIP was a prevailing party and concluded that Bridgeport should bear the reasonable fees and costs incurred by UPIP after September 16, 2002, the date that summary judgment was entered in favor of the Warner defendants. In calculating the lodestar amount, the district court reduced the hourly rates charged by UPIP's Los Angeles counsel, "capped" the rates charged for paralegal work, deducted fees for redacted or nonspecific entries, allocated fees between two cases against UPIP, and reduced the lodestar amount by 25% to account for

"top-heavy" billing by partners for work that could have been performed by associates. Bridgeport does not challenge the district court's calculation of the amount of fees reasonably incurred or its inclusion of any particular item in the award.

After correctly stating the applicable standards, the district court indicated at the outset that Bridgeport's reliance on its novel, albeit unsuccessful, theory was not objectively unreasonable. In particular, the district court recognized that it had "ruled on a previous motion against Bridgeport for attorney's fees that the plaintiff's theory that publishing defendants could be liable for infringement within the limitations period for the receipt of royalties income was novel enough to weigh against an award of attorney's fees."

Nonetheless, the district court found that several factors weighed in favor of an award, including factors enumerated in its decisions awarding attorney fees to prevailing defendants in other *Bridgeport* cases. Specifically, the district court noted the plaintiffs' overly aggressive, take-no-prisoners litigation tactics, and the overall impression that plaintiffs' strategy was to exact the highest possible toll in order to maximize the settlement value of the cases. The deciding factor, however, was specifically identified as

the plaintiff's decision not to settle or otherwise compromise its claim after the Court ruled in this case against its theory of infringement by receipt of royalties, which by September 2002 was its only remaining viable theory against this defendant. Faced with certain defeat on summary judgment, the plaintiff unnecessarily extended this litigation and caused both sides to expend enormous resources preparing for a trial on a theory that had been clearly rejected by the Court, where the plaintiff had no new facts to offer that might persuade the Court otherwise. The Court views this behavior as foolhardy, and believes it entitles the defendant to a partial award of fees and costs. Therefore, the Court finds that [UPIP] is

entitled to all reasonable fees and costs incurred after September 16, 2002, the date that the Court adopted the Report and Recommendation by the Magistrate Judge [], approved the dismissal of all claims in this action against the Warner defendants as barred by the statute of limitations and rejected receipt of income theory of infringement. The Court finds that Bridgeport's further pursuance of similar claims against Universal after that date were objectively unreasonable.

With our affirmance of summary judgment, it is clear that UPIP is a prevailing party. As discussed earlier, however, attorney fees are not to be awarded automatically to every prevailing party. In *Murray Hill*, this court reversed an award of attorney fees to the prevailing defendant and concluded that the plaintiff had presented unsettled questions of law and one or more colorable claims of infringement. 264 F.3d at 640. This is consistent with the view from other circuits that it generally does not promote the purposes of the Copyright Act to award attorney fees to a prevailing defendant when the plaintiff has advanced a reasonable, yet unsuccessful claim. *See Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 122 (2d Cir. 2001); *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 75 (1st Cir. 1998) (In close infringement cases, "the need to encourage meritorious defenses is a factor that a district court may balance against the potentially chilling effect of imposing a large fee award on a plaintiff[] who . . . may have advanced a reasonable, albeit unsuccessful, claim.").

The district court explicitly found that Bridgeport's receipt of royalties theory was objectively reasonable. This objectively reasonable theory did not suddenly become objectively unreasonable (factually and legally) once it became apparent that the district court would most likely reject it and enter summary judgment in UPIP's favor. As a result, we find it would be an abuse of discretion to base the award on the objective unreasonableness of Bridgeport's

claim. The district court also faulted Bridgeport for failing to settle, but no settlement offer was made by UPIP. Instead, UPIP demanded that Bridgeport stipulate to dismissal of its objectively reasonable claim and forego a decision on the merits specific to UPIP.

While it would be improper to sanction a party simply for electing to await decision on a pending motion, we have recognized that a party's litigation tactics may weigh in favor of an award of fees when the conduct supports an inference concerning motivation or a particular need for deterrence. *Compare Matthew Bender*, 240 F.3d at 125-26 (filing 12(b)(6) motion), *with Coles*, 283 F.3d at 803 (in light of objective unreasonableness of the claims, the plaintiff's tactics and strategies could "be interpreted as seeking to force settlement with a wealthy songwriter with little or no basis for doing so.") We remand for the district court to consider in its discretion whether, despite the objective reasonableness of the claim, an award or partial award is warranted based on a weighing of one or more *Fogerty* factors or because an award would otherwise further the purposes of the Copyright Act.

For the reasons set forth above, we **AFFIRM** the entry of summary judgment in favor of UPIP; **AFFIRM** the dismissal of Ammo Dump Music and Carrumba Music; and **VACATE** the award of attorney fees and costs to UPIP and **REMAND** for further consideration consistent with this opinion.

---

## CONCURRING IN PART, DISSENTING IN PART

---

RONALD LEE GILMAN, Circuit Judge, concurring in part and dissenting in part.  I concur in Parts I, II, and III of the majority opinion.   But I disagree with the majority's conclusion in Part IV that the district court abused its discretion in awarding attorney fees to UPIP, the prevailing defendant.

Even assuming that Bridgeport's receipt-of-royalties argument was not unreasonable at the outset, the fact remains that the failure of the argument was absolutely foreordained once the district court resolved that very issue in a parallel case in which Bridgeport was also the plaintiff.  From that point forward, the district court had a sound basis to conclude that Bridgeport was unreasonable in continuing to pursue its claim against UPIP, especially in light of UPIP's proposal to stipulate to a dismissal of the complaint while still preserving Bridgeport's right to appeal.  This case is therefore easily distinguishable from those where the district court was found to have abused its discretion by shifting attorney fees to a party who advanced a reasonable claim that had not previously been ruled upon, such as in *Matthew Bender & Co., Inc. v. West Publishing Co.*, 240 F.3d 116, 123 (2d Cir. 2001), which is cited in Part IV of the majority's opinion.

I agree with the general principle that awarding attorney fees in cases that present close questions in unsettled areas of law is improper; otherwise, parties might be deterred from bringing colorable claims or defenses that merit judicial consideration.  But I cannot perceive how the purposes of the Copyright Act would be thwarted by deterring a plaintiff such as Bridgeport from pressing a theory that had already been considered and rejected in a parallel case before the very same judge.  At a minimum, I am not "firmly convinced that a

mistake has been made" in this case. *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (quotation marks omitted) (defining the term "abuse of discretion").  Nor do I believe that "the lower court relie[d] on clearly erroneous findings of fact, . . . improperly applie[d] the law[,] or use[d] an erroneous legal standard." *Id.* (quotation marks omitted).  Accordingly, I would **AFFIRM** the decision of the district court because I find no abuse of discretion in its award of attorney fees to UPIP.