Thomas A. **LUKEN,** as Assignee
for BUC International
Corp., Plaintiff,

v.

**INTERNATIONAL YACHT COUNCIL,
LTD.,** and MLS Solutions, Inc.,
Defendants.

No. 02–60772–CV.

United States District Court,
S.D. Florida.

Sept. 24, 2008.

Michael Paul Woodbury, Robert Peter Santiago, Melissa Carrie Levine, Margaret Annaliza Brenan Correoso, Woodbury & Santiago, Miami, FL, David A. Hoines, David A. Hoines PA, Fort Lauderdale, FL, for Plaintiff.

Brian Patrick Knight, Dale Lyn Friedman, Conroy Simberg Ganon Krevans & Abel, Hollywood, FL, Steven Wayne Marcus, Ruden McClosky Smith Schuster & Russell, Fort Lauderdale, FL, Suzanne R. Eschrich, G. Donovan Conwell, Jr., Conwell Sukhia & Kirkpatrick, P.A., Tampa, FL, Dennis Michael Campbell, Jay Anthony Gayoso, Clarke Silverglate & Campbell, P.A., Miami, FL, for Defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION

WILLIAM P. DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon the Plaintiff Thomas Luken's Motion for Award of Attorneys Fees and Costs [DE 1387, 1404], and the Report and Recommendation [DE 1451] of Magistrate Judge Robin S. Rosenbaum, dated September 8, 2008. Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court has conducted a *de novo* review of the entire court record herein, including the underlying Motion, Response and Supplement [DE 1424, 1425], Reply [DE 1443], the Report and Recommendation [DE 1451], Plaintiff's Appeal of Magistrate's Report and Recommendation [DE 1455], and is otherwise fully advised in the premises.

On April, 2004, the Plaintiff prevailed at jury trial on certain copyright infringement claims in this case [DE 1125, 1137]. The Plaintiff seeks an award of attorneys' fees pursuant to 17 U.S.C. §§ 505 and 412(2). Magistrate Judge Rosenbaum, relying on factors identified by the Supreme Court in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 n. 19, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) (noting factors of "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence"), granted attorneys' fees only as to the reasonable fees associated with opposing the Defendants' untimely request for a "virtual identicality" standard in the jury instruction and the Defendants' objections to the introduction of the admission of an expert accountant's damage calculation report (which Defendants had waived in a joint stipulation), and with opposing the Defendants' appeal regarding those issues. As far as the Defendants' other litigation actions, Magistrate Judge Rosenbaum did not find them to be objectively unreasonable or frivolous because the factual and legal issues were close. Plaintiff objects to the Report and Recommendation by asserting that the infringement was intentional because it was clear that Defendants intentionally copied materials. While evidence did show that Defendants intentionally copied Plaintiff's materials, the legal

issues of the merger doctrine and the inability to copyright facts could have led Defendants to maintain a reasonable legal position that such activity was arguably not infringement.

Plaintiff identifies facts in its Objections that do not directly conflict with the Magistrate Judge's finding that Defendants' did not have frivolous or objectively unreasonable legal positions on the substantive issues. Stating that copying material was "standard practice" in web-building is not an admission that it is illegal. Preparation of material in anticipation of a lawsuit also does not necessarily indicate that Defendants knew their actions constituted infringement, only that they anticipated a legal challenge to them.

The Court agrees with the reasoning and analysis of the Magistrate Judge granting reasonable attorneys' fees on the two limited issues identified above, and denying attorneys' fees otherwise. Accordingly, it is **ORDERED AND AD-JUDGED** as follows:

1. The Magistrate Judge's Report and Recommendation [DE 1451] is hereby **ADOPTED**;

2. Plaintiff's Motion for Award of Attorney Fees and Costs [DE 1387, 1406], is hereby **GRANTED, in part, and DENIED, in part**;

3. The Plaintiff's Objections [DE 1455] are hereby **OVERRULED**;

4. Plaintiff shall recover more than *de minimis* fees addressing the issues discussed in Section II.B.I.B of the Magistrate Judge's Report and Recommendation [DE 1451];

5. Plaintiff shall submit an itemized list of all records supporting reasonable attorneys' fees paid in defending against Defendants' arguments identified in Section II.B. 1.B of the Magistrate Judge's Report and Recommendation [DE 1451];

6. All other attorneys' fees are denied.

7. This case shall remain closed.

## REPORT AND RECOMMENDATION

ROBIN S. ROSENBAUM, United States Magistrate Judge.

This matter comes before the Court on Plaintiff's Motion for Award of Attorney's Fees and Costs [D.E. 1387, 1406], pursuant to an Order of Reference entered by the Honorable William P. Dimitrouleas, United States District Judge. [D.E. 1388]. In his Motion, Plaintiff, who prevailed at trial on certain copyright infringement claims in this case, *see* D.E. 1125, 1137, seeks attorneys' fees and costs expended prosecuting those violations. Defendants oppose Plaintiff's Motion, arguing that no statute entitles Plaintiff to an award of fees, and, even if a statute does make Plaintiff eligible for consideration of such an award, an award of fees in this case would be inconsistent with the purposes of the Copyright Act, and, thus, must not be made. The Court has carefully considered Plaintiff's Motion, all materials submitted in support thereof and in opposition thereto, the record in this case, and oral argument presented at a hearing held on Wednesday, September 3, 2008. Additionally, the Court is otherwise fully advised in the premises. For the reasons described below, I recommend that the Court *GRANT IN PART and DENY IN PART* Plaintiff's Motion.

### I. BACKGROUND

Since 1961, through its predecessor, Plaintiff BUC International, Inc. ("BUC"), a Florida corporation, has published a used boat price guide, which lists recreational boats and yachts with their prices. D.E. 288. In about 1982, BUC began developing a computer network and software application called the BUC Marine Sales &

Charter Network ("BUCNET System") for yacht and boat brokers and dealers to help facilitate the sale and chartering of used boats. *Id.* Prior to this time, brokers exchanged listings with each other individually through the mail or other methods of communication. *Id.* The BUCNET System, however, created a centralized exchange for information. *Id.*

In developing the BUCNET System, BUC also designed a specific format for use in the listing of vessels ("BUC Standard Listing Form"), which assisted in placing the listing information into a searchable database. D.E. 288. As part of that format, BUC created section headings such as accommodations and layout, overview, galley/laundry, electronics and navigation, construction, fishing equipment, and other such categories, for which brokers could choose to provide information. *BUC Int'l Corp. v. Int'l Yacht Council Ltd.,* 489 F.3d 1129, 1135 (11th Cir. 2007) (*"First BUC Appeal"*). Prior to the advent of the BUC Standard Listing Form, the industry had no standard way of listing vessels for sale. *Id.*

In order for brokers to access the BUC-NET System, they had to enter into a license agreement with BUC and pay a fee. D.E. 288. Under a recent version of the license agreement, typically, each BUC member agreed to the following:

> Licensee shall not use, sell, distribute, display, or otherwise transfer, any information obtained from the BUC Licensed System to others for any purpose provided however, that Licensee may provide printed listings of vessels for sale or charter to prospective boat buyers, sellers, or charterers on an individual basis and in such limited and reasonable quantities for their consideration. No right or license is granted herein for the use of the BUC Licensed System, databases, reports, listings or any other item delivered by BUC to Licensee hereunder, for any third person, or for any use by an third person of the BUC Licensed System.

*First BUC Appeal,* 489 F.3d at 1134 n. 5. Thus, BUCNET served as a broker-to-broker multiple listing service ("MLS"), as opposed to a primarily retail-based website available to the public at large. *Id.* at 1134.

In 1997 BUC registered a copyright in the "compilation, selection and organization of [the BUCNET] database." *First BUC Appeal,* 489 F.3d at 1135. BUC, however, did not register a copyright for the content of the vessel listings filled out by the brokers until 2002, when it added the words "and text of vessel listings" to "compilation, selection and organization of [the BUCNET] database." *Id.*

Meanwhile, in 2000, the Florida Yacht Brokers Association ("FBYA") and other professional yacht broker associations formed International Yacht Council Limited ("IYC"), a defendant in this matter. *First BUC Appeal,* 489 F.3d at 1135. Among other functions, IYC decided to create its own online MLS for yacht listings. In order to develop an MLS, IYC entered into a contract with Defendant MLS Solutions, Inc. ("MLS Solutions"). *Id.* at 1135–36. MLS Solutions designed a web-based MLS for Defendant IYC that was similar to the BUCNET System. *Id.* at 1136. In approximately May, 2001, Defendant IYC launched its MLS website that was open to brokers only. D.E. 288. A few months later, in March, 2002, Defendant IYC opened a second website for vessel listings, but this one was available without restriction to general members of the public. *Id.*

MLS Solutions maintained the websites and placed the vessel listings it received from the brokers on the websites. *First BUC Appeal,* 489 F.3d at 1136. Because many of the listings came from brokers who were BUCNET System licensees,

these brokers frequently simply copied the listings they had submitted to BUC for its BUCNET System. *Id.* Additionally, MLS Solutions employed staff who acquired BUCNET System passwords from BUC licensees and accessed the BUCNET System to copy vessel listings for purposes of placing those listings on the IYC websites. *Id.*

Once Defendant IYC began its public website, BUC learned that more than 4,400 vessel listings appearing on the site had been copied and pasted from the BUCNET System. *First BUC Appeal,* 489 F.3d at 1136–37. Hence, the instant litigation ensued.

BUC filed its original Complaint on June 5, 2002. [D.E. 1]. In addition to IYC and MLS Solutions, BUC named other entities and individuals as defendants. *See id.* The original Complaint alleged various copyright infringement violations, as well as other claims. *Id.*

On June 9, 2002, BUC moved for preliminary injunctive relief, seeking to shut down Defendants' website, enjoin Defendants from copying vessel listings from Plaintiff's BUCNET System, require Defendants to remove all copied listings from their database, and recover damages and attorney's fees. *See* D.E. 9. Following a hearing on BUC's motion, the Honorable William P. Dimitrouleas granted in part BUC's motion for preliminary injunction. *See* D.E. 63.

In rendering this ruling, the Court noted that simple copying of facts from a compilation does not constitute infringement, and, contrary to BUC's suggestion, "sweat of brow" in compiling facts does not entitle the gatherer to copyright protection. D.E. 63 at 4–5. "Rather, the key determination is whether a copyright owner made individual judgment as to the selection of facts to include in a compilation." *Id.* at 5. In this regard, Defendants had argued that much of the information at issue was factu-

al, and whatever was not belonged to the brokers who provided the information to Defendants, as they were the authors of the listings and had provided BUC with only the right to publish the listing and to make derivative works from it. D.E. 23 at 6–7.

For purposes of the preliminary injunction hearing, the Court rejected Defendants' position and instead found that while the vessel descriptions contained facts that could not be copyrighted, the way in which those facts were expressed was subject to copyright protection. D.E. 63. Moreover, because the contracts entered into between the brokers and BUC purported to render the vessel listings on the BUCNET System copyrighted by BUC, the Court declined to accept Defendants' assertion that the brokers, not BUC, were the authors of the vessel listings for purposes of copyright law. *Id.* Instead, the Court determined that BUC had demonstrated a substantial likelihood of success on the merits of its copyright infringement claim with respect to the vessel listings. D.E. 63 at 5 n. 4, 7–8. The Court similarly disagreed with Defendants' attempt to convince the Court to apply to the vessel listings the merger doctrine, which essentially provides that where only one way to say something exists, no copyright may be claimed. *Id.* In this regard, the Court stated, "[T]here are not so few ways of expressing such descriptions as to warrant application of the merger doctrine." *Id.* at 6. Consequently, the Court preliminarily enjoined Defendants from copying yacht descriptions from BUC's listings and from maintaining copied yacht descriptions on their websites. *Id.* at 8–9.

As for BUC's request to enjoin continued operation of Defendants' websites, the Court declined to grant BUC's motion in that regard. *Id.* In reaching this conclusion, the Court noted that unlike with re-

gard to the vessel listings, the Eleventh Circuit applies a standard of "virtual identicality" in considering claims of infringement as they pertain to the non-literal elements of a website. *Id.* at 6–7. The Court expressly relied upon the Eleventh Circuit's ruling in *MiTek Holdings, Inc. v. Arce Engineering, Inc.,* 89 F.3d 1548 (11th Cir.1996), to support its determination. *Id.* Finding that Defendants' websites differed in appearance from the BUCNET System, the Court held that BUC had failed to demonstrate a substantial likelihood of success on the merits with respect to its copyright infringement claim as it regarded the appearance of the websites, as well as the coordination of the facts within the BUCNET System. *Id.*

Following the entry of the preliminary injunction, Defendants took steps to comply with the Court's Order. BUC, however, discovered a few vessel listings on Defendants' MLS that still contained information copied from the BUCNET System. As a result, BUC filed a motion for contempt. *See* D.E. 88. After a hearing, Magistrate Judge Barry S. Seltzer issued his Report and Recommendation finding that Defendants engaged in a "reasonably diligent and energetic effort" to seek and remove descriptive listings from their MLS that had been copied from the BUCNET System. D.E. 192 at 13. Thus, Magistrate Judge Seltzer recommended denying BUC's Motion for Contempt. *Id.* In so concluding, Magistrate Judge Seltzer noted,

> [The Court] was mindful that the meaning of the phrase "descriptive expressions," as applied to specific listings, may be subject to reasonable dispute.... As the argument at the hearing illustrated [on Plaintiff's Motion for Contempt], the distinction between (protected) "descriptive expressions" and (unprotected) "factual information" is not always plain.

*Id.* at 12–13 (footnote omitted). Judge Dimitrouleas adopted Magistrate Judge Seltzer's Report and Recommendation on February 26, 2003. D.E. 275.

During the course of the litigation, BUC filed its First Amended Complaint, which, among other functions, added antitrust claims against Defendants. *See* D.E. 138. Defendant MLS Solutions moved to dismiss various aspects of the First Amended Complaint, *see* D.E. 186, and the Court granted Defendants' Motion to Dismiss the antitrust claims, as well as a claim for tortious interference, dismissing those claims without prejudice. D.E. 281.

Consequently, BUC filed a Second Amended Complaint in which it again alleged antitrust violations, in addition to other claims, against Defendants. *See* D.E. 288. Again, Defendant MLS Solutions moved to dismiss the antitrust claims. *See* D.E. 411. This time, the Court granted Defendants' motion and dismissed BUC's antitrust claims with prejudice. *See* D.E. 538.

Defendants subsequently each filed a counterclaim for a declaratory judgment ruling BUC's copyright to be invalid as it pertained to the vessel listings. *See* D.E. 599, 603.

Thereafter, Defendant IYC moved for summary judgment with respect to counts in the Second Amended Complaint alleging copyright infringement, vicarious copyright infringement, and contributory copyright infringement. *See* D.E. 874. On the same day, Defendant MLS Solutions also moved for summary judgment regarding, among other counts, contributory copyright infringement. *See* D.E. 868–871, 901. In support of its Motion for Summary Judgment, Defendant IYC raised many of the same defenses it had argued in its opposition to BUC's Motion for Preliminary Injunction. *See* D.E. 874.

Although the Court granted Defendant MLS Solutions's Motion for Summary

Judgment in certain respects, it denied both Defendant MLS Solutions and Defendant IYC's Motions for Summary Judgment with respect to the copyright infringement-related claims. *See* D.E. 1048. In so doing, the Court left the remaining claims for trial and noted, "Defendants may raise the arguments in the summary judgment motions in a motion for judgment as a matter of law, if appropriate." *Id.* at 11.

Trial against Defendants[1] began on March 22, 2004. *See* D.E. 1073. At the close of BUC's case in chief, Defendant MLS Solutions moved for judgment as a matter of law, which the Court denied. *See* D.E. 1094. Defendants again moved for judgment as a matter of law at the close of all of the evidence. *See* D.E. 1107. The Court denied Defendants' motion without prejudice to renew the motion as a motion for judgment not withstanding the verdict. *Id.*

Following a ten-day trial, the jury returned a verdict finding that BUC owned valid copyrights which Defendants infringed. *See* D.E. 1125. Upon a finding of infringement by Defendants, the verdict form required the jury to arrive at a calculation for actual damages sustained with respect to all copyright infringement incidents and for statutory damages incurred as a result of the 1,464 infringements that occurred after BUC added the "text of vessel listings" to its copyright registration in 2002. *Id.* The jury determined that BUC had experienced $1,598,278 in actual damages and $1,098,000 in statutory damages. *Id.* In so finding with respect to the statutory damages, the jury chose to award the lowest possible statutory damages available under the Copyright Act. Defendants moved for judgment not withstanding the verdict, which the Court denied. D.E. 1134.

In view of the verdict, BUC elected under 17 U.S.C. § 504(c) to receive actual damages instead of statutory damages. Based on the jury finding and the Court's review of the law, in addition to entering final judgment for BUC in the amount of $1,598,278 plus interest, *see* D.E. 1137, the Court issued a permanent injunction against Defendants regarding the copyright claims, *see* D.E. 1130, and a declaratory judgment in favor of BUC and against Defendants on Defendants' counterclaim for a declaratory judgment of invalidity of the BUC copyrights. *See* D.E. 1131. Defendants then moved for a new trial, *see* D.E. 1138, and the Court denied the motion. *See* D.E. 1156.

Thereafter, Defendants appealed the final judgment to the Eleventh Circuit. The Eleventh Circuit affirmed the Court in all respects.[2] *See First BUC Appeal, supra.*

In the meantime, BUC timely filed its Agreed Motion to Enlarge Time to File Motions Seeking Attorney's Fees, *see* D.E. 1146, which the Court granted. *See* D.E. 1148. After several more extensions, BUC filed an affidavit in support of its verified motion for attorney's fees on January 7, 2008. *See* D.E. 1387. BUC filed its actual

---

1. In addition to Defendants IYC and MLS Solutions, BUC tried the case against Defendant William Pazos, the president of MLS Solutions. Prior to trial, BUC had settled with or otherwise dismissed its claims against all other defendants. BUC did not prevail on any claims against Defendant Pazos.

2. Subsequently, Defendants appealed the Court's declination to give Defendants a set-off against the Final Judgment of the money that BUC recovered from the defendants with whom it settled prior to trial. *See BUC Int'l Corp. v. Int'l Yacht Council Ltd.,* 517 F.3d 1271 (11th Cir.2008) ("*Second BUC Appeal* "). Any conduct engaged in by any party in or leading up to the *Second BUC Appeal* is not at issue in BUC's pending Motion.

Verified Motion for Attorney's Fees and Costs on April 7, 2008, in which it sought attorney's fees incurred through the district court litigation and the appellate court litigation through the end of the *First BUC Appeal.* *See* D.E. 1406. In response, Defendant MLS Solutions filed its opposition on April 11, 2008, *see* D.E. 1413, while Defendant IYC filed its opposition on June 26, 2008. *See* D.E. 1424. On that same date, Defendant MLS Solutions filed its Supplemental Response to BUC's Fees Motion. *See* D.E. 1425. BUC submitted its Reply on August 28, 2008. *See* D.E. 1442. The Court held oral argument on the motion on September 3, 2008. This matter is now ripe for disposition.

## II. *ANALYSIS*

■■■ Ordinarily, in the United States the prevailing party in litigation may not collect its attorney's fees from the losing party. *Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Under this so-called "American Rule," each party, including the prevailing party, must bear its own fees. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. Of Health & Human Resources,* 532 U.S. 598, 602, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). As applicable to the Court's analysis in the instant case, one exception to the American Rule occurs where "explicit statutory authority" provides for a prevailing party to recover its fees. *Id.* (quoting *Key Tronic Corp. v. United States,* 511 U.S. 809, 819, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994)). In such a case, however, the party seeking its attorney's fees must demonstrate that through the statutory provision relied upon, Congress "clearly intended to allow . . . recov-

ery" of the fees sought. *Lewis v. Federal Prison Ind., Inc.,* 953 F.2d 1277, 1281 (11th Cir.1992) (citing *Fitzgerald v. U.S. Civil Serv. Commission,* 554 F.2d 1186, 1189 (D.C.Cir.1977)).

### A. Statutory Authorization Permitting Award of Attorney's Fees

In this case, BUC seeks its attorneys' fees pursuant to 17 U.S.C. §§ 505 and 412(2). Section 505 generally authorizes the award of attorney's fees to the prevailing party, subject to the limitations on such awards set forth in other provisions of Title 17.[3] Section 412(2) imposes the single Title 17 limitation applicable in the case at hand:

> In any action under this title, other than an action brought for a violation of the rights of the author under section 106A(a), an action for infringement of the copyright of a work that has been preregistered under section 408(f) before the commencement of the infringement and that has an effective date of registration not later than the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement, or an action instituted under section 411(b), no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for—
>
> (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412(2).[4] The parties agree that of the more than 4,000 vessel listings

---

**3.** In its entirety, Section 505 provides, "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may

also award a reasonable attorney's fee to the prevailing party as part of the costs."

**4.** Among other functions, Section 504 articulates the manner in which "statutory damages" are determined.

BUC charged Defendants with infringing, only 1,464 of those infringements occurred during the time period described by Section 412(2). Consequently, at most, under Sections 505 and 412(2), BUC may pursue its attorney's fees incurred with respect to prosecuting those 1,464 infringements only.

Defendants, however, assert that even with respect to the 1,464 infringements that occurred within the time period set forth by Section 412(2), making BUC theoretically eligible for fees incurred in pursuing such violations, BUC may not recover any attorney's fees because BUC elected to receive actual damages, as opposed to statutory damages, for all copyright infringements it proved under Title 17. According to Defendants, under the statutory scheme at issue, attorney's fees are inseparably tied to statutory damages, and only if statutory damages are awarded may attorney's fees be imposed. Thus, Defendants reason, because BUC chose to receive actual damages for the 1,464 infringements falling within the statutory period and specifically rejected statutory damages, BUC is now precluded from obtaining attorney's fees, even with respect to the 1,464 infringements occurring within the Section 412(2) time period.

In support of this argument, Defendants point to the statutory language grouping "statutory damages" and "attorney's fees" in a single clause in Section 412(2), and contend that this placement indicates congressional intent that attorney's fees be permitted only when statutory damages are awarded. Defendants further suggest that Congress made this decision because actual damages can include as a component attorney's fees. Thus, allowing a party to recover actual damages and a separate award for attorney's fees would permit a double recovery. Finally, Defendants note that while they have no authority to support this proposed interpretation

of Section 412(2), nor are they aware of any case refuting it.

The Court has similarly found no cases directly on this point. Upon review of the plain language of the statute, as well as the statutory scheme and the legislative history behind it, the Court respectfully declines Defendants' invitation to be the first Court to adopt Defendants' proposed interpretation of Section 412(2). In reaching this conclusion, the Court begins the analysis with a review of the statute at issue, for if Congress has directly spoken to the precise question at issue, and congressional intent is clear, "that is the end of the matter...." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). "[T]he court must give effect to the unambiguously expressed intent of Congress." *Id.* at 843, 104 S.Ct. 2778.

As pertinent to this particular issue, Section 412(2) provides, "[N]o award of statutory damages or of attorney's fees ... shall be made for any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." In other words, a party remains eligible for an "award of statutory damages or attorney's fees" where it registered the infringed copyright within three months after the first publication of the work. The use of the disjunctive "or" in the statute clearly indicates that statutory damages and attorney's fees are two different items. Neither constitutes a component of the other. Nor does any other aspect of Section 412(2) by its language require that a party elect and receive statutory damages in order to become eligible to receive attorney's fees. Thus, Section 412(2), on its face, appears to render BUC eligible for consid-

eration of an award of attorney's fees for those fees incurred in prosecuting the 1,464 infringements falling within the Section 412(2) time period.

The Court, however, does not consider the language of Section 412(2) in a vacuum. Rather, the Court must consider whether the proposed interpretation of Section 412(2) appears to be inconsistent with any other aspect of the statutory scheme. *See U.S. v. McLemore,* 28 F.3d 1160, 1162 (11th Cir.1994) (citing *Smith v. U.S.,* 508 U.S. 223, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993)). Consequently, the Court looks to the purpose of the Copyright Act as a whole and more specifically to Section 504, which discusses remedies for infringement. Beginning with Section 504, that provision sets forth remedies for infringement. Under Section 504, an infringer of copyright is liable for either "(1) the copyright owner's actual damages and any additional profits of the infringer . . ., or (2) statutory damages. . . ." Section 504(b) further expounds on the meaning of "actual damages and profits," specifying that "actual damages and profits" refers to "actual damages suffered by [the copyright holder] as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." The Court finds nothing in the language of this provision that indicates that Congress intended for attorney's fees to constitute a part of "actual damages," as Defendants have suggested, or to be precluded from recovery when a copyright owner elects to receive actual damages.

As for Section 504's discussion of statutory damages, the statute first provides, in pertinent part, "[T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages. . . ." 17 U.S.C. § 504(c)(1). The statute further describes

the manner in which a court should calculate statutory damages where a copyright owner elects to recover such an award instead of actual damages. Nowhere does the statute mention "attorney's fees." Thus, the Court can discern nothing from Section 504 limiting eligibility for attorney's fees to those cases where a copyright owner chooses to receive statutory damages.

Moreover, the natural interpretation of Section 412(2) allowing for eligibility for attorney's fees where the conditions of that section are met, regardless of whether the copyright owner decides to recover actual or statutory damages, is not inconsistent with the purposes of the Copyright Act, of which Section 412(2) constitutes a component. As the Supreme Court has found, "The primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public." *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 524, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). Finding a copyright owner that selected to recover actual damages, as opposed to statutory damages, eligible to receive attorney's fees does not in any way that this Court can recognize interfere with this purpose.

■ While the statute appears on its face to make BUC eligible for the recovery of attorney's fees incurred in pursuing the 1,464 infringements that occurred during the time period described by Section 412(2), the legislative history removes any conceivable doubts. In enacting Section 412, Congress recognized that the Copyright Act would render copyright registration optional, but Congress still wished to induce copyright registration "in some practical way." H.R.Rep. No. 1476, 94th Cong., 2d Sess.1976, 1976 U.S.C.C.A.N. 5659 ("H.R.Rep.1476"), 5774. Thus, Congress created "special statutory remedies,"

such as those discussed above, that a copyright owner could receive only if the owner had, "by registration, made a public record of his copyright claim." *Id.* Explaining the difference in remedies to which a copyright owner would be entitled, depending on whether that owner had registered its copyright, the House Report stated,

> Under the general scheme of the bill, a copyright owner whose work has been infringed before registration would be entitled to the remedies ordinarily available in infringement cases: an injunction on terms the court considers fair, and his actual damages plus any applicable profits not used as a measure of damages. However, section 412 would deny any award of the special or "extraordinary" remedies of statutory damages or attorney's fees where infringement of copyright in an unpublished work began before registration or where, in the case of an [sic] published work, infringement commenced after publication and before registration (unless registration has been made within a grace period of three months after publication).... With respect to published works, clause (2) would generally deny an award of those two special remedies where infringement takes place before registration. As an exception, however, the clause provides a grace period of three months after publication during which registration can be made without loss of remedies; *full remedies could be recovered for any infringement* begun during the three months after publication if registration is made before that period has ended....

*Id.* (emphasis added). Thus, Congress did not intend for the election of statutory damages to trigger eligibility for attorney's fees. Rather, Congress designed Section 412(2) to make timely registration the touchstone of attorney's fee eligibility under the Copyright Act.

 This passage from the House Report also demonstrates that Congress did not view attorney's fees to constitute a component of "actual damages." By noting that a copyright owner whose work was infringed prior to registration could recover only actual damages plus applicable profits not used as a measure of damages, but that Section 412 "would deny an award of the special or 'extraordinary' remedies of statutory damages or *attorney's fees, ...*" *id.* (emphasis added), Congress necessarily indicated that attorney's fees are a separate remedy from "actual damages." In short, the Court finds that the statutory language, design, and purpose, as well as the legislative history behind Section 412(2), dictate the conclusion that when a copyright owner who is otherwise entitled to receive consideration for an award of attorney's fees under Sections 505 and 412(2) elects to receive actual damages instead of statutory damages, that copyright owner does not forego its eligibility for attorney's fees.

### B. Standards Under Which the Court May Exercise Its Discretion to Award Attorney's Fees Pursuant to 17 U.S.C. §§ 505 and 412(2)

Having determined that Sections 505 and 412(2) make BUC eligible for the Court to consider awarding BUC its attorney's fees incurred in prosecuting the 1,464 infringements falling within the time period specified by Section 412(2), the Court must now review the standards under which the Court may exercise its discretion to award such fees. In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), the Supreme Court considered the standards that should inform a court's decision to award attorney's fees to a prevailing party in a copyright infringement action.

First, the Supreme Court discussed the issue of whether the same standards for awarding fees should apply to both prevailing plaintiffs and prevailing defendants.[5] In that regard, the Court reasoned,

Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible. To that end, defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement.

510 U.S. at 527, 114 S.Ct. 1023. Based on these considerations, the Supreme Court held that with respect to the award of attorney's fees under Section 505, prevailing plaintiffs and prevailing defendants must be "treated alike. . . ." *Id.* at 534, 114 S.Ct. 1023.

■ Moreover, courts should not simply award attorney's fees to the prevailing party as a matter of course. *Id.* at 533, 114 S.Ct. 1023. Rather, the Supreme Court endorsed several considerations that may guide a court's determination regarding whether to award attorney's fees. Among this non-exclusive list of factors, the Supreme Court identified " 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.' " *Id.* at 535 n. 19, 114 S.Ct. 1023 (quoting *Lieb v. Topstone Ind., Inc.,* 788 F.2d 151, 156 (1986)). In considering these factors, however, courts must be careful to award fees only where such an award is "faithful to the purposes of the Copyright Act." *Id.* at 535 n. 19, 114 S.Ct.

1023. With these thoughts in mind, the Court considers BUC's request for attorney's fees.

### 1. Frivolousness and Objective Unreasonableness

■ The Eleventh Circuit has observed, The touchstone of attorney's fees under § 505 is whether imposition of attorney's fees will further the interests of the Copyright Act, *i.e.,* by encouraging the raising of objectively reasonable claims and defenses, which may serve not only to deter infringement but also to ensure "that the boundaries of copyright law [are] demarcated as clearly as possible" in order to maximize the public exposure to valuable works.

*MiTek Holdings, Inc. v. Arce Engineering Co., Inc.,* 198 F.3d 840, 842 (11th Cir.1999) (quoting *Fogerty,* 510 U.S. at 526–27, 114 S.Ct. 1023 and citing *Lotus Dev. Corp. v. Borland Int'l, Inc.,* 140 F.3d 70, 75 (1st Cir.1998)). Along this same line of thought, the Second Circuit has opined that "the imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." *Matthew Bender & Co. v. West Publ'g Co.,* 240 F.3d 116, 121–22 (2d Cir. 2001). Thus, whether an award of attorney's fees will have a salutary effect on the area of copyright by deterring infringement where the law clearly precludes the challenged conduct, or, conversely, whether such an award will discourage parties from litigating the more nebulous aspects of copyright law for fear that they may have to pay attorney's fees should they lose, constitutes a significant consideration in the Court's analysis of BUC's request for attorney's fees. Moreover, the Court must assess the reasonableness of the los-

---

**5.** In this case, Defendants do not challenge Plaintiff's status as a "prevailing party" with respect to the 1,464 infringements that occurred during the Section 412(2) time period.

ing party's position by evaluating it as of the time that the party took the stance at issue, not with the benefit of hindsight that conclusion of the litigation brings. *Brewer–Giorgio v. Bergman,* 985 F.Supp. 1478, 1483 (N.D.Ga.1997) (citing *Garnier v. Andin Intern., Inc.,* 884 F.Supp. 58, 62 (D.R.I.1995)); *see, e.g., Thompkins v. Lil' Joe Records, Inc.,* 2008 WL 896898, *6 (S.D.Fla.2008) (declining to award attorney's fees because at the time of the lawsuit, the central issue raised by the non-prevailing party was an issue of first impression in the circuit, which had been decided in the non-prevailing party's favor in other circuits).

In the case at hand, BUC contends that Defendants' positions with respect to the 1,464 copyright-infringed vessel listings were objectively unreasonable and even frivolous for a variety of reasons. The Court will address each assertion in turn. First, BUC argues that the Court rejected Defendants' defenses to the copyright infringement claims at the preliminary injunction hearing and in its respective denials of Defendants' motions for judgment as a matter of law after Plaintiff rested at trial, at the close of all of the evidence at trial, and after the adverse jury verdict. D.E. 1443 at 7–8. BUC further points to Defendants' loss before the Eleventh Circuit on some of the same arguments they raised in the preliminary injunction proceeding and in their three motions for judgment on the pleadings, as well as to the Eleventh Circuit's denial of Defendants' petition for *en banc* rehearing of the Eleventh Circuit's decision in this case. *Id.* at 8. Based on these losses, BUC concludes that Defendants maintained an objectively unreasonable and frivolous position throughout this litigation. *Id.*

■ The Court disagrees. Although a frivolous and objectively unreasonable defense will certainly fail if presented repeatedly at a preliminary injunction hearing, in multiple motions for judgment on the pleadings, and on appeal, the converse is not always true. Alone, the fact that a court and its reviewing court in succession ultimately repeatedly reject a legal proposition in a single case does not necessarily mean that that legal position was objectively unreasonable or frivolous at the time that it was taken.[6] Courts regularly reject reasonable legal positions in favor of other reasonable legal arguments. Indeed, precisely because the law may be susceptible to more than one reasonable interpretation, litigation occurs. Thus, the cases applying this *Fogerty* factor teach that a court must consider not how many times in the litigation at issue the presiding court rejected a non-prevailing party's legal position, but rather, the clarity of the law with respect to the losing party's position at the time that the losing party pressed its argument.

### A.

■ Turning to the arguments Defendants advanced in the defense of this case, the Court first considers Defendants' contention that the compilations contained only factual information that is not subject to copyright. Defendants first raised this argument in opposition to the preliminary injunction. While the Court found that the vessel listings contained original elements such as the way in which the facts contained therein were expressed, the Court, nonetheless, noted the well-established proposition that facts are not subject to copyrighting. Moreover, after the Court imposed the preliminary injunction

---

**6.** The Court further notes that because of a need to preserve issues for appeal, parties must often repeat or otherwise renew arguments for the district court that the district court has already rejected.

in this case and BUC challenged Defendants' compliance efforts in removing from their MLS vessel listings copied from the BUCNET System, Magistrate Judge Seltzer expressly noted that "the distinction between (protected) 'descriptive expressions' and (unprotected) 'factual information' is not always plain." D.E. 192 at 12–13. And, while, in arguing this issue, both parties relied on cases expressing general truisms of copyright law, such as the axiom that facts may not be copyrighted, neither side was able to locate a case with a fact pattern exactly analogous to the one in the case at hand. Rather, each side cited cases that were of some factual similarity to the pending case, but with the outcomes each respectively preferred.

Defendants alternatively argued that if the vessel listings did contain original elements that were able to be copyrighted, the brokers, not BUC, were the authors of the listings. Consequently, BUC could not have had an enforceable copyright on the listings. At the preliminary injunction stage, the Court rejected this argument and found that BUC had a substantial likelihood of success on the merits because of the contracts entered into between BUC and the brokers, which appeared to make BUC the owner of any obtainable copyright for the vessel listings submitted by the brokers to BUC.

Defendants further suggested that the option that the BUCNET System gave to brokers to use the standard format or instead to select manually their own section headings and arrangement of their vessel listings rendered the brokers the authors of each of their vessel listings, not BUC. The Court declined to accept this contention and denied Defendant MLS Solutions's motion for judgment as a matter of law on this ground. The Eleventh Circuit affirmed because it concluded that, as a matter of fact, the evidence adduced at trial showed that brokers modified from

the BUCNET System format only approximately two percent of the listings, which the Eleventh Circuit described as a "*de minimis*" amount. *First BUC Appeal,* 489 F.3d at 1142. Because the vast majority of the listings did not veer from the BUCNET System's standard format, the Eleventh Circuit held that the Court did not err when it denied Defendants' motions for judgment as a matter of law on this ground.

Next, Defendants asserted that BUC's selection of section headings could not survive application of the merger doctrine, which provides that " 'expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself.' " *First BUC Appeal,* 489 F.3d at 1142 (quoting *BellSouth Advertising & Publishing Corp. v. Donnelley Information Publishing, Inc.,* 999 F.2d 1436 (11th Cir.1993) (*en banc*) (citation omitted)). Again, the Court denied Defendants' motion for judgment as a matter of law on this ground, and, explaining its basis over three pages of its opinion, the Eleventh Circuit affirmed. In so concluding, the Eleventh Circuit noted,

> [W]e note the tension in the underlying policies of the idea-expression dichotomy and the merger doctrine. On the one hand, we do not want to grant a monopoly over an idea. On the other hand, we seek not to frustrate the goal of securing copyright protection for original expressions of authorship. *At the margins, the distinction between idea and expression can be subtle and difficult.*

*First BUC Appeal,* 489 F.3d at 1143 (emphasis added). The Eleventh Circuit went on to explain that based on the evidence elicited at trial—more specifically, BUC's submission of vessel listings from various companies that were not generated using

the BUCNET System standard format, prior to the BUCNET System, no uniformity existed in the way information about yachts was presented. *Id.* at 1144. Thus, the Eleventh Circuit determined that "BUC's selection of section headings did not merge with the larger idea of describing a yacht," although Defendants could not be foreclosed from using industry terms like "galley" or "hull," based on the merger doctrine. *Id.*

Finally, Defendants urged the Court to grant judgment for Defendants as a matter of law because they claimed that BUC's compilation lacked the minimal degree of creativity necessary for an original work of authorship, and, thus, could not be copyrighted. As with Defendants' prior arguments, the Court declined to rule for Defendants on this ground, either. The Eleventh Circuit affirmed, noting that BUC and Defendants introduced conflicting testimony in support of their respective positions regarding the originality of the BUCNET compilation. Describing the trial with respect to this point as a "swearing match," the Eleventh Circuit concluded that it could not find that the Court should have resolved the originality issue as a matter of law. *Id.* at 1145.

 Significantly, in affirming the Court in all respects with regard to the Court's denial of Defendants' various motions for judgment as a matter of law, the Eleventh Circuit emphasized that " '[j]udgment as a matter of law is appropriate only if the evidence is *so overwhelmingly* in favor of the moving party that a reasonable jury could not arrive at a contrary verdict.' " *Id.* at 1141 n. 26 (emphasis added) (quoting *Middlebrooks v. Hillcrest Foods, Inc.,* 256 F.3d 1241, 1246 (11th Cir.2001) (citations omitted)). Thus, as explained above, the Court's denial of Defendants' repeated motions for judgment as a matter of law is not tantamount to a finding that Defendants' positions espoused in their various motions for judgment as a matter of law were either frivolous or objectively unreasonable. Indeed, the Eleventh Circuit's reliance on the jury's resolution of some of the issues raised by Defendants' defenses further demonstrates that reasonable people could disagree as to whether Defendants infringed upon BUC's copyrights, and, thus, Defendants' defenses in these respects could not have been either objectively unreasonable or frivolous.[7] Moreover, the jury's decision to award the lowest possible statutory damages to BUC ($750 per

---

7. Defendants also argue that their defenses were objectively reasonable, based on *Nautical Solutions Mktg., Inc. v. Boats.com,* 2004 WL 783121 (M.D.Fla. Apr.1, 2004). In *Nautical Solutions,* the court considered a similar copyright infringement claim. The plaintiff in that case challenged the defendant's cutting and pasting of photographs and descriptions from the plaintiff's yacht MLS website onto the defendant's yacht MLS website. The court held that the defendants' actions did not constitute copyright infringement. *Nautical Solutions* is distinguishable from the case at hand because, unlike Defendants in this case, (1) the defendant in *Nautical Solutions* did not cut and paste the HTML from the copied website, in addition to the photographs and descriptions of the yachts and (2) the parties in *Nautical Solutions* agreed that the yacht

descriptions belonged to the brokers, and the copyrights to those descriptions were not transferred to the plaintiff. Additionally, Defendants could not have relied on *Nautical Solutions* at the time that they defended this case because the findings of fact and conclusions of law from that trial were not issued until April 1, 2004, which occurred during the trial in the instant matter. Nevertheless, the fact that another court determined the *Nautical Solutions's* defendant's conduct not to constitute infringement where the issues in that case were so similar to the ones in the pending case provides further indication that the issues in the case under consideration involved an area of copyright law that was not so clearly demarcated at the time that the case arose as to render Defendants' defenses objectively unreasonable or frivolous.

violation, out of a range of $750–$30,000 under 17 U.S.C. § 504(c)) indicates further that the factual questions involved in the instant case were close. Under these circumstances, where no case law directly on point existed at the time that Defendants took these legal positions and where the jury verdict and the Court's and the Eleventh Circuit's opinions make clear that the positions advanced by Defendants involved somewhat close issues of law and fact, the Court finds that Defendants' legal positions as described above helped to demarcate the boundaries of copyright law more clearly, and, thus, furthered the purposes of the Copyright Act.

### B.

In addition to Defendants' substantive defenses in this case, however, BUC also takes issue with certain conduct in which Defendants engaged during the course of the trial in this matter. First, BUC complains that at trial and on appeal, Defendants objected to the introduction of BUC's evidence regarding actual damages, more specifically, the admission of an expert accountant's damage calculation report, based on grounds that it lacked foundation, was cumulative, and constituted hearsay. Defendants further objected, arguing that the accountant sought to testify beyond the scope of his expertise. The Court overruled Defendants' objections because Defendants entered into a Joint Pretrial Stipulation where they voiced no objections to BUC's expert report nor to the documents upon which BUC's expert relied in developing his report (*see* D.E. 1062 at 124–125 (Plaintiff's Exhibits 623–25)), and, thus, waived any objections they may have otherwise had to the expert materials. Moreover, the Court determined that BUC's expert was qualified to give the testimony he gave. Nevertheless, Defendants continued to press this issue on appeal, and the Eleventh Circuit affirmed the Court, finding that it could not fault the

Court's ruling. *First BUC Appeal*, 489 F.3d at 1139 n. 2.

Likewise, BUC protests that Defendants' objections to the Court's copyright instruction of the jury regarding the "substantial similarity" standard were frivolous and objectively unreasonable. Similar to the expert report, in accordance with the Court's Scheduling Order requiring the parties to file all proposed jury instructions in writing one week before the calendar call, *see* D.E. 101, Defendants had submitted jury instructions before the trial requesting application of the "substantial similarity" standard, *see* D.E. 1067 at 30, as had BUC. At the charge conference at the close of the evidence on April 2, 2004, Defendants for the first time requested that the Court give the jury the "virtual identicality" standard, as opposed to the "substantial similarity" standard. *See* D.E. 1183 at 106–07. Following the weekend and the start of closing arguments, Defendants again requested that the Court instruct the jury with respect to the "virtual identicality" standard. *See* D.E. 1184 at 17–18. On neither occasion did Defendants provide the Court with a proposed written instruction on the standard. The Court denied Defendants' request and instead instructed the jury on the "substantial similarity" standard.

On appeal, the Eleventh Circuit affirmed the Court's decision, noting that based on the parties' pretrial submissions of jury instructions, all parties tried the case under the impression that it would be decided pursuant to the "substantial similarity" standard. Moreover, Defendants provided no explanation for their new position that the Court should instruct the jury under the "virtual identicality" standard. The Eleventh Circuit further took issue with Defendants' late attempt to invoke this standard, based on the fact that the Eleventh Circuit had adopted the "virtual iden-

ticality" standard for use under certain circumstances in *MiTek Holdings, Inc. v. Arce Engineering Co., Inc.*, 198 F.3d 840, 842 (11th Cir.1999), three years before BUC sued Defendants and five years before the trial in this matter, leaving Defendants with plenty of time to learn of the case and the standard.[8] Yet Defendants waited until the charge conference to address the issue for the first time, and, even then, they did not propose a written instruction but instead, as the Eleventh Circuit described, "apparently expected the court, at the eleventh hour, to do what counsel had not done, get out the law books, decide for itself which standard applied, and then draft a set of jury instructions." *First BUC Appeal*, 489 F.3d at 1150. In this situation, the Eleventh Circuit concluded that it "would be hard pressed indeed, to hold that given these circumstances, the district court abused its discretion." *Id.*

Based on this conduct, where Defendants acted contrary to what essentially amounted to their pretrial stipulations, and, in the case of the "virtual identicality" standard, neglected to support their position with a proposed written jury instruction even as closing arguments were occurring, Defendants' conduct was objectively unreasonable and frivolous. Especially in view of the Eleventh Circuit's comments regarding the "virtual identicality" issue on appeal, the Court finds that Defendants then compounded their objectively unreasonable behavior by continuing to press these points on appeal. As the Court can discern no benefit to the area of copyright law arising from Defendants' behavior in these regards, the Court finds that these instances of conduct support an award of attorney's fees.

▪ Finally, BUC argues that Defendants' appeal was frivolous and objectively

unreasonable as it asserted that the Court abused its discretion in charging the jury on statutory damages. On appeal, the Eleventh Circuit "dispose[d]" of Defendants' contention "in the margin," noting that 17 U.S.C. § 504(c)'s provision allowing a copyright owner to elect, at any time before final judgment is rendered, to recover either actual damages or statutory damages, mooted any conceivable error the Court may have committed in charging the jury on statutory damages since BUC elected to accept actual damages. The Court finds that this fact should have been clear under the statute to Defendants at the time that they appealed this issue. Coupled with the Eleventh Circuit's efficient dismissal of Defendants' argument in a footnote, Defendants' advancing of this argument does not appear to further the purposes of the Copyright Act, in that no additional clarification in this area of the law was necessary at the time that Defendants took their position. Consequently, the Court finds the contention to be objectively unreasonable.

### 2. Motivation

▪ BUC urges that Defendants copied BUC's vessel listings to give BUC an unfair jump-start on building a business intended to compete against BUC. While it cannot be denied that Defendants' conduct certainly assisted Defendants in expediting the development of Defendants' MLS, this fact alone does not necessarily amount to an improper motivation. As the First Circuit has noted, "[C]opyright law often delineates the boundaries of economic competition." *Lotus Development Corp. v. Borland Intern., Inc.*, 140 F.3d 70, 75 (1st Cir.1998) (citing *Feist Publications, Inc. v. Rural Tel. Serv.*, 499 U.S. 340, 349, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)). Thus,

---

**8.** The Court notes that the Preliminary Injunction Order entered July 5, 2002, also discussed the *MiTek Holdings, Inc.,* case. *See* D.E. 63 at 6–7.

where, as here, it was not clear at the time that Defendants engaged in their conduct that copyright law precluded their behavior, Defendants' attempts to take a shortcut to develop their MLS cannot be deemed an improper motivation weighing in favor of an award of attorney's fees.

■■■ Defendants, on the other hand, attempt to persuade the Court that BUC had an improper motive when it filed suit against Defendants. In making this argument, Defendants point to BUC's pleadings in its lawsuit against its former counsel from the pending case. In BUC's Complaint in that case, BUC alleges that on March 11, 2004, when it participated in the case under consideration in mediated settlement discussions with other defendants in the instant case, BUC was "extremely reluctant to settle with these solvent defendants" because "such a settlement would mean that … BUC would be left with the prospect of going to trial against Defendants that, in all likelihood, would have little or no ability to satisfy a monetary judgment entered against them." D.E. 1413–2 at 39. Alternatively, if BUC settled with the other defendants in the instant case, BUC was considering dropping the case against the remaining Defendants in order to avoid the cost of trying the case against "potentially uncollectible Defendants." *Id.* at 40. According to BUC, BUC's attorneys informed BUC that, "apart from being vindicated, if BUC won at trial it could collect on whatever minimal assets there were and essentially shut down the remaining Defendants, IYC and MLS [Solutions].… Since the … Defendants competed with BUC, [BUC's counsel] claimed that BUC would obtain a benefit by eliminating its competitors." *Id.* at 41. As is apparent from the proceedings in the immediate case, BUC chose to settle with the other defendants and proceed to trial against Defendants MLS Solutions and IYC. Based on these allegations in BUC's

Complaint against its former attorneys, Defendants assert that BUC engaged in the pending litigation for the anti-competitive purpose of putting Defendants out of business, and, thus, BUC's motivation conflicts with the purposes of the Copyright Act in that it does not promote creativity and new ideas.

While the Court first notes that "there is nothing inherently improper about bringing a claim that is well-founded in law and fact against one's competitors, even when legal action, if successful, will inflict severe economic consequences upon them," *Lotus Development Corp.*, 140 F.3d at 75, the chronology of events in this case demonstrates that BUC did not even make the contested consideration until March 11, 2004. As BUC filed the case at hand in 2002, any thought of putting Defendants out of business in March, 2004, could not possibly have had a bearing on BUC's intent in filing the original case. Moreover, the earlier allegations in BUC's complaint against its former counsel indicate that BUC filed the instant case because it believed Defendants' conduct to be improper and to amount to copyright infringement. D.E. 1413–2 at 18. It goes without saying that protection of one's copyright constitutes a permissible motivation in filing a copyright infringement case against one whom the copyright holder believes in good faith to have infringed the copyright. Of course, the Copyright Act was designed to enable such conduct. Consequently, the Court declines to find an improper motivation on the part of BUC. Consideration of this *Fogerty* factor, therefore, results in a neutral finding neither favoring nor opposing an award of attorney's fees in this case.·

### 3. *Need to Advance Considerations of Compensation and Deterrence*

■■■ The Eleventh Circuit has held that under this *Fogerty* factor, "in deter-

mining whether to award attorney's fees under § 505, the district court should consider not whether the losing party can afford to pay the fees but whether the imposition of fees will further the goals of the Copyright Act." *MiTek Holdings, Inc.*, 198 F.3d at 842 (citing *Lotus Development Corp.*, 140 F.3d at 74). To a great extent, therefore, the need to advance considerations of compensation and deterrence goes hand in hand with the inquiry into the reasonableness of the parties' positions. Consistent with furthering the purposes of the Copyright Act, a party that advances a reasonable position should not be deterred from doing so for fear that it will have to pay attorney's fees if it loses. *See Thompkins v. Lil' Joe Records, Inc.*, 2008 WL 896898, *6. Conversely, a party that presents only objectively unreasonable claims or defenses should not be encouraged in such conduct and, in fact, should pay the attorney's fees associated with the prevailing party's resulting necessary prosecution or defense. Along these same lines, a party that seeks to enforce its copyrights and prevails over frivolous or objectively unreasonable claims or defenses should have its attorney's fees awarded to promote enforcement of the Copyright Act and creativity, respectively. With this in mind, the Court finds that its rulings with respect to frivolousness and objective unreasonableness must govern its determinations with regard to compensation and deterrence.[9]

### 4. Final Balancing

In considering all of the *Fogerty* factors in light of the purposes of the Copyright Act, the Court finds that no award should be made to BUC for fees it expended in the District Court in this case, except to the extent that it incurred demonstrable fees in the District Court in defending against the arguments advanced by Defendants and described in Section II.B.1.B. of this Report and Recommendation.[10] In view of the neutral finding with respect to motivation, the Court looks to whether Defendants' defense in the district court was objectively unreasonable or frivolous. For the reasons previously discussed, the Court finds that, for the most part, it was not. Consequently, the Court declines to make an award to BUC of fees it incurred in the District Court in this case, other than those quantifiable, reasonable fees BUC paid with respect to addressing issues at the District Court level raised in Section II.B.1.B. of this Report and Recommendation, as any award beyond that at the District Court level would not further the purposes of the Copyright Act.

 As for attorney's fees incurred by BUC on appeal, the Court first notes that Section 505 permits for an award of partial fees. *Lotus Development Corp.*, 140 F.3d

9. To the extent that the financial conditions of the parties should factor into consideration of this *Fogerty* factor, the Court finds it to have a neutral effect in this case. BUC is currently in bankruptcy, and, as evidenced by BUC's allegations in its lawsuit against its former counsel, BUC believes Defendants unable to afford the substantive award against them. Under these conditions, financial means is a non-issue.

10. Based on the record, it appears that these Defense arguments discussed in this Section of the Report and Recommendation applied equally to pre- and post-registration infringements. Because BUC had to address these arguments with respect to the 1,464 infringements of the registered copyrights, BUC should receive all reasonable fees expended by it in opposing Defendants' defenses in these regards. Should the billing records reflect that BUC incurred fees defending against these arguments as they related solely to the infringements occurring prior to registration of the copyrights, BUC may not recover such attorney's fees for the reasons explained in Section II.A. of this Report and Recommendation.

at 76 and 76 n. 5 (citations omitted). In view of this fact and of the circumstances of this case, the Court holds that based on Defendants' objectively unreasonable and frivolous appeals (under the standard of furthering the purposes of the Copyright Act) of the issues discussed in this Report and Recommendation, *see supra* at Section II.B.1.B., BUC should receive an award of fees incurred as a result of defending against the particular issues noted in Section II.B.1.B. of this Report and Recommendation. Towards this end, BUC must itemize all attorney's fees expended in connection with combating these particular issues both in the District Court and in the Eleventh Circuit and submit such itemization and billing records to the Court and Defendants for review and consideration. This finding does not constitute a determination that BUC should receive all attorney's fees incurred on appeal—only those incurred in defending against the specific issues addressed at Section II.B.1.B. of this Report and Recommendation.

### III. CONCLUSION

Accordingly, based on a thorough review of the briefed Motion, all filings in support thereof and in opposition thereto, the case file, and oral argument, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion for Award of Attorney's Fees and Costs [D.E. 1387, 1406] be **GRANTED IN PART and DENIED IN PART.** More specifically, I recommend that the Court order the following:

1. An award of attorney's fees incurred in the district court should be denied, except to the extent that BUC incurred more than *de minimis* fees in the District Court in addressing the issues discussed in Section II.B.1.B. of this Report and Recommendation, for which an award of reasonable attorney's fees should be granted;

2. With respect to attorney's fees expended in defending against Defendants' arguments identified in Section II.B.1.B of this Report and Recommendation during the *First BUC Appeal,* an award of reasonable attorney's fees should be granted;[11]

3. Within 30 days of the Court's entry of its Order regarding this Report and Recommendation, BUC should submit an itemized list[12] of all records supporting reasonable attorney's fees paid in defending against Defendants' arguments identified in Section II.B.1.B of this Report and Recommendation at the District Court and during the *First BUC Appeal;*

4. All other attorney's fees should be denied;

5. Within 30 days of the Court's entry of its Order regarding this Report and Recommendation, BUC should file its itemized list of all taxable costs incurred in this litigation for which BUC seeks an award.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) days from service of this Report and Recommendation to file written objections, if any, with the Honor-

---

11. To be clear, this Report and Recommendation does not recommend an award of attorney's fees for all fees incurred on appeal. Rather, it recommends an award of attorney's fees only for those fees incurred on appeal in defending against the specific arguments set forth at Section II.B.1.B. of this Report and Recommendation.

12. BUC should itemize the attorney's fees it seeks by those fees incurred in response to the particular conduct found to be objectively unreasonable and frivolous on the part of Defendants.

able William P. Dimitrouleas, United States District Judge. Failure to file written objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal any factual findings contained herein. *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir.1993); *Lo-Conte v. Dugger,* 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir. Unit B 1982) (*en banc* );[13] 28 U.S.C. § 636(b)(1).

Sept. 8, 2008.

13. Decisions rendered by Unit B of the former Fifth Circuit constitute binding precedent in the Eleventh Circuit. *Stein v. Reynolds Secs., Inc.,* 667 F.2d 33, 34 (11th Cir.1982).